Frederick Hinckel, Respondent, *v.* Jennie B. Stevens,
Appellant.

*Easement — right to take ice from a stream acquired by adverse user — inference from
its reservation in a deed that it was done under a claim of right — a covenant not
to interfere with the stream does not prevent it.*

The right to enter upon a stream and take ice which forms thereon is a property
right which may be acquired by grant, or by prescription which presumes a
grant.

The right to so take ice is, in its nature, an incorporeal hereditament like an
easement, or a *profit a prendre*, and the acts necessary to the acquirement of
such a right by adverse user are quite different from those which are necessary
to establish an adverse possession of the bed of the stream and are continuous.
The right is to be exercised, of necessity, only at one season of the year, when
the condition of the stream admits thereof, leaving long periods of time in each
year to pass without any exercise of the right.

Deeds of conveyance of the dominant tenement, assuming to convey to the mid-
dle of the stream, although ineffectual to convey the title beyond its bank, may
be used as the basis of a claim to take ice therefrom, and a conveyance of the
servient tenement upon condition that such conveyance shall not be construed
to interfere with the right to the free use of the stream, as then used and
enjoyed by the occupants of the dominant tenement, in the absence of proof
that any other use was made of such waters, affords a fair inference that the
taking of ice therefrom was under a claim of right so to do.

A covenant on the part of the grantees of the dominant tenement contained in a
conveyance from the then owner of both the dominant and the servient tene-
ments, that neither they nor their grantees would in any manner interfere
with the full enjoyment of all the rights reserved by such grantor, in which
rights were included the stream, is a personal covenant and does not run with
the land.

*Semble*, that such a covenant would not prevent the acquirement by adverse user,
commenced in violation of such covenant, of an easement or *profit a prendre*
in favor of the owners of the dominant estate to take ice from such stream.

Appeal by the defendant, Jennie B. Stevens, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the office
of the clerk of the county of Albany on the 17th day of December,
1897, upon the decision of the court rendered after a trial before
the court without a jury at the Albany Trial Term.

The action is to restrain the defendant from interfering with the
plaintiff's taking of ice from the Normanskill, in front of her prem-
ises, and to forever enjoin her from entering thereon and taking ice
therefrom. The trial court found for the plaintiff, and a judgment

to the above effect was entered thereon. From such judgment this appeal is brought.

*Ward & Cameron* and *Marcus T. Hun,* for the appellant.

*Scherer & Downs,* for the respondent.

PARKER, P. J. :

It is clear that the paper title to the bed of the creek in question was in the plaintiff. Upon this appeal that fact is not seriously controverted. I also concur with the trial judge, that no title *thereto* by adverse user has been established by the defendant.

The defendant, therefore, has not justified her acts in entering upon the creek, when frozen over, and excluding the plaintiff and his servants from cutting ice thereon.

But the defendant claims that, even though she has established no title to the bed of the creek, and no right to utterly exclude the plaintiff from taking ice therefrom, yet she has shown a right, acquired by prescription, to cut and take as much ice from such creek as is required for her own use upon her adjacent lands, and that, therefore, the judgment in this case, in so far as it restrains her from exercising that right, is erroneous.

The right to enter upon premises and take ice which forms thereon is, in my opinion, a property right that may be acquired by grant (*Huntington* v. *Asher,* 96 N. Y. 604), or by prescription, which presumes a grant. (*Parker* v. *Foote,* 19 Wend. 309.)

Whether the defendant had established such a right was not decided by the trial court. The findings of facts do not contain any decision upon that precise question. They go only to the extent of deciding that the possession, or user, which defendant had of the bed of the stream was not sufficient to establish an adverse title thereto, but they do not pass at all upon the question whether she and her grantors had or had not, by adverse user, acquired the right to take ice therefrom for her own use. The right to so take ice is in its nature an " incorporeal hereditament," like an " easement," or a " profit a prendre ; " and the acts necessary to acquire such a right by adverse user would be quite different from those which would be necessary to establish an adverse possession of the bed of the stream.

While I am clear that no such adverse possession or user was shown as would give her title to the bed of the stream, I am inclined to think that she did show sufficient facts to establish her right to annually take ice therefrom sufficient to fill her own ice house.

There being no finding, or request to find, on that question, this court must find in the record sufficient evidence to sustain the defendant's claim in this respect, otherwise the judgment as entered must be affirmed.

It fairly appears from the evidence that, for a period extending from 1844 to 1877, the parties owning the premises which the defendant now owns, and through whom she obtained her title, annually took ice from the stream opposite such premises sufficient to fill their ice house thereon, and that such ice was used by them, or by their tenants, upon such premises. Subsequent to 1877, and after the Hinckels obtained the title to the stream, it seems that they ceased taking the ice from the stream, and some arrangement appears to have been made with the Hinckels by which they took ice from the dock. It cannot, therefore, be said that after that date their taking of ice from the stream was a continuous user.

But, if a grant is to be presumed by the user which existed from 1844 to 1877, then the rights acquired by such grant were not lost. Their acts subsequent to 1877 were not a continuation of their user prior to that date, nor were they so continuous that they could constitute the basis of an adverse user. But neither were they operative to annul a grant that we might presume had already been acquired. (*Sherman* v. *Kane*, 86 N. Y. 57.) So the question is presented, whether such taking of ice for the period above stated, by the predecessors in title of this defendant, raises the presumption of the grant of an easement, or of a " profit a prendre," appurtenant to the premises, which has passed with the premises to this defendant.

When the right of " profit a prendre " belongs to an individual, distinct from ownership in other lands, it takes the character of an interest or estate in the land itself rather than that of a proper easement. It is then termed a " profit a prendre " in gross. But when the right is enjoyed by reason of holding a certain other estate, it is regarded in the light of an easement appurtenant to such estate. (19 Am. & Eng. Ency of Law, 260 ; *Pierce* v. *Keator*, 70 N. Y. 419, 421, 422.)

Assuming, as I think we may, that this right to take ice is that of a "profit a prendre," it may also be conceded that, if it has been acquired at all, it has been acquired by reason of the ownership of the lands which were adjacent to the stream and for the benefit of which the ice was taken. The evidence is, that the ice house on such premises was annually filled. The right actually exercised was the filling annually of the ice house on these premises, by those living thereon, and for their use. And the claim to so take the ice doubtless arose, as shown hereafter, from the fact that such premises were supposed to extend to the center of the stream. The grant to be presumed, if any, would be a grant to that extent, and for that purpose only. It would not be in the nature of a "profit a prendre" in gross, but as one appurtenant to the premises of those who took the ice, and on which it was stored and used. It was in the nature of an easement then, annexed to the premises and passing with them to this defendant.

A right by prescription is acquired when an open, uninterrupted and continuous user for more than twenty years of an easement upon another's land is had under a claim of right adverse to such other's title, and when such claim has been acquiesced in by the owner of the servient tenement. (*Bushey* v. *Santiff*, 86 Hun, 384, and cases there cited.) After such an user, for such a period, the conclusive presumption of a grant arises. (*Ward* v. *Warren*, 82 N. Y. 265, 268.)

The taking of ice which the owners of the Hun farm, now owned by the defendant, had annually enjoyed from 1844 to 1877, was clearly open and notorious. It was also continuous within the meaning of the above rule, for although exercised only at one season of the year, and long periods of time in each year passed without its exercise, nevertheless it was exercised in each year whenever the condition of the stream permitted. It was the only user which was necessary or possible to secure the benefits desired. It was as continuous as the nature of the right claimed permitted, and, therefore, it was sufficiently continuous to create the basis of a prescriptive right to take and enjoy that benefit. That during such period such user was uninterrupted and undisputed also appears. That it was under a claim of right adverse to the title of the owners of the stream fairly appears from the following facts: Thomas and

Elizabeth Hun took $352\frac{6}{10}$ acres of land under a perpetual lease from Stephen Van Rensselaer, the stream and its bed and the right to build a dam there and flood lands thereby and build a mill being reserved to their grantor. Such reserved rights, and also the rents reserved in such lease, passed from Stephen to Philip Van Rensselaer. The Huns conveyed such tract, or some portion thereof, but just how much or what part this record does not disclose to us, in November, 1831, to Robert Boyd, and the defendant herein, through several mesne conveyances, has acquired the premises so conveyed to Boyd. It is apparent that such premises abutted on the Normanskill, and the deed to Boyd, and all subsequent conveyances, described them as extending to the center of the stream as it winds and turns. Such premises, in 1844, were owned by Ambrose Spencer, Mrs. Laura S. T. Walsh, who subsequently acquired his title, then living thereon with him. Ice was then taken from the creek to fill the ice house on the premises, and continued to be up to the time Mrs. Walsh's title passed in 1863 to Mrs. Brooks, and thence continuously while Mrs. Brooks had the title up to at least 1877. The deeds of these several owners assumed to convey to the middle of the stream, and although ineffectual to *convey* the title beyond the bank of the stream, they might be used as the basis of a claim to take ice from the stream.

In 1850 Philip Van Rensselaer, who then owned the stream and its bed, as above stated, conveyed all his rights therein to Congdon, and in such deed inserted the following condition : " Provided, now and ever, and this grant is upon this condition and restriction, that it shall not be construed or held to conflict or interfere with the right to the free use of the Normanskill, as now used or enjoyed by the parties of the first part and their assigns, or their tenant, Nathaniel Sawyer, on the land of the farm leased as aforesaid to Thomas and Elizabeth Hun."

It is not entirely clear to what use of the Normanskill this condition refers, but it is apparent therefrom that, to some extent, at least, the tenants on the land leased to Hun were exercising a right to the waters of the creek; and inasmuch as it very clearly appears that at that date those occupying the premises in question had for years been annually taking ice therefrom, and occupying under deeds assuming

to convey to the center of the stream, and it does not appear that any one on the Hun premises made any other use whatever of such waters, it is a fair inference that the taking of such ice was done under a claim of right so to do.

I am not to be understood as deciding that such provision in the Congdon deed *grants* or *reserves* to the Huns, or to any of their grantees, any rights whatever in the ice or waters of the stream, but I refer to it as a fact, which to some extent indicates and suggests that whatever use the tenants on the Hun premises made of the stream was made as a right rather than by mere permission. From all the facts, as they appear in the case, it is a fair conclusion that the taking of ice during the period above stated, by the defendant's predecessors in title, was commenced because of the description of their deeds taking them to the middle of the stream, and continued under a claim of right which was in fact adverse to the title of its owners.

The use of an easement for twenty years unexplained will be presumed to be under a claim or assertion of right, and adverse, and not by the leave or favor of the owner. (*Miller* v. *Garlock*, 8 Barb. 153. See, also, *Colburn* v. *Marsh*, 68 Hun, 269, 272 ; *Nicholls* v. *Wentworth*, 100 N. Y. 455, 461 ; *Treadwell* v. *Inslee*, 120 id. 458.)

It seems, therefore, that, during the period above stated, the defendant's predecessors in title did all the acts necessary to acquire by prescription a right, in the nature of an easement appurtenant to their premises, to take ice from the Normanskill for the use of the owners thereof.

The claim that the conveyances under which the defendant and her predecessors took title to her premises operated to prevent her acquiring such a right by prescription cannot be sustained.

There is a recitation in the conveyance to Spencer to the effect that it was made subject to all the " conditions, provisos and restrictions " in the said lease to the Huns, and a similar recitation was also in the conveyance from Hun to Boyd and from Boyd to L'Amoreaux, who conveyed to Spencer. The only conditions, provisos and restrictions which can be found in that lease refer to the title which Van Rensselaer reserved in the stream, etc. ; and that such title was still in Van Rensselaer and his grantees is not at all inconsistent with a right to take ice from the stream. A right by " profit a prendre " presupposes that the title to the land is in another, and an

admission that such other has such title is not a concession that no "profit a prendre" exists thereon. Hence, it can hardly be said that Spencer and his grantees, by reason of such recitation in their deeds, have admitted that no such right existed as against Van Rensselaer's title.

In the lease to the Huns there was a covenant to the effect that neither they nor their grantees would in any manner interfere with the full enjoyment of all the rights, etc., by Van Rensselaer therein reserved, and the conveyances to Boyd and to L'Amoreaux contain a recital that they are taken subject to the covenants as well as the conditions, etc., in that lease. In the conveyance to Spencer, however, no reference to the covenants in such lease is made.

It seems to me clear that such a covenant is a personal one, and that it does not run with the land. It was not obligatory upon Spencer or any of his grantees. Such a covenant is quite different from one to the effect that the land conveyed shall be used only in a particular manner, or from a covenant which in any manner restricts the use of the land granted. A covenant that the grantee will not trespass upon the adjacent lands of the grantor will not be obligatory upon his grantee, nor follow the premises in the possession of all subsequent grantees.

Moreover, I am not prepared to say that one who covenants not to interfere with the use of his neighbor's land, may not acquire an easement thereon by prescription. If he persistently breaks such covenant and openly and notoriously claims and uses such easement, and the neighbor acquiesces therein for twenty years, why should not a grant be presumed as much as if no such covenant existed? It is the acquiescence in the hostile claim that raises the presumption, and the existence of the covenant does not excuse or prevent the covenantee from resisting such hostile claim. Nor is there any equity which should prevent the covenantor from setting up such a presumed grant. With or without a covenant, the right by prescription is founded upon a long-continued invasion of another's rights. In either event it is the result of a wrongful act. If, however, the one injured acquiesces in it for twenty years, the law arbitrarily, but for the sake of peace, assumes that there was a grant, and, therefore, no wrong. Whether the adverse user commences in violation of a covenant or merely in violation of another's rights

without a covenant, is of no consequence so. long. as the injured party has for twenty years acquiesced therein.

I conclude, therefore, that this defendant has the right to take ice from the stream opposite her premises, for the purpose of her own use thereon, and that the provision of the judgment which enjoins her from so doing is erroneous.

If this question had been passed upon by the trial court I should be inclined to correct such error by modifying the judgment, but inasmuch as it seems to have been tried and decided upon the question of title to the bed of the stream alone, I think that both parties should have another opportunity to retry the questions of fact upon which this conclusion is reached.

All concurred.

Judgment reversed, new trial granted, costs to abide the event.