MARY A. WINNE, Appellant, *v.* HERBERT A. WINNE, Respondent.

*Easement of way over land devised by a father in two farms, one to each of two sons — effect of the use of the way by the father before his death — presumption from the use of an easement for twenty years.*

Francis Winne was the owner of a tract of land, two sides of which were bounded, by highways. During his lifetime he maintained and used a roadway, which had been in existence prior to 1834, leading from his dwelling house to each of the highways. Francis Winne died in 1862, leaving a last will and testament by which he divided his tract of land into two parts, devising one part to his son Jurian and the other, upon which the dwelling house was located, to his son Adam. The roadway referred to passed through each of said farms and, until 1902, Jurian and Adam Winne and their successors in title continuously and uninterruptedly used the entire roadway.

In an action brought by the owner of the Jurian Winne farm to restrain the owner of the Adam Winne farm from using that portion of the roadway located upon the Jurian Winne farm, it was

*Held,* that Adam and Jurian Winne took title to their respective farms under their father's will, subject to the apparent reciprocal burdens and to the reciprocal benefits created by the existence of the roadway, and that their successors in title took the farms with the same reciprocal burdens and benefits (per CHESTER, J.);

That the owner of the Adam Winne farm had, by an open, notorious and uninterrupted use of the highway by himself and his predecessors since 1862, under a claim of right conferred by the devise in the will of Francis Winne, acquired a right of way in the roadway over the Jurian Winne farm (per CHESTER, J.);

That the use of an easement for twenty years unexplained will be presumed to be under a claim or assertion of right and adverse, and not by leave or favor of the owner (per CHESTER, J.);

That as it appeared that Francis Winne had, prior to his death, divided the tract of land into two separate farms, the existence and use of the roadway during his lifetime created *quasi* easements affecting each of the two farms (per PARKER, P. J., and CHASE, J.);

That the use of the roadway by the devisees, in the same manner as it had been used for many years prior to their testator's death, constituted a practical construction by themselves of their rights under the will and a determination that the *quasi* easements had become actual easements attached to their respective farms (per PARKER, P. J., and CHASE, J.).

HOUGHTON and SMITH, JJ., dissented.

APPEAL by the plaintiff, Mary A. Winne, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 8th day of April, 1903, upon the decision of the court rendered after a trial at the Albany

Trial Term, the jury having been discharged, dismissing the complaint upon the merits.

*Lewis E. Carr* and *Charles Irving Oliver*, for the appellant.

*P. C. Dugan*, for the respondent.

Judgment affirmed, with costs.

CHESTER, J., voted for affirmance on opinion of HERRICK, J., in the trial court; CHASE, J., concurred in affirmance in memorandum, in which PARKER, P. J., concurred; HOUGHTON, J., dissented in opinion, in which SMITH, J., concurred.

The following is the opinion of HERRICK, J., delivered at the Albany Trial Term:

HERRICK, J.:

Action for an injunction to restrain the defendant from going over the plaintiff's land, and for damages.

Defense, an easement and right of way.

Upon the trial it appeared that one Francis Winne formerly owned and occupied a tract of land in the town of Bethlehem, Albany county, with a highway upon two sides of his land; that during his lifetime he maintained and used a passage or roadway leading from his dwelling house to each of said roads, such passage or roadway being in existence prior to the year 1834.

He died in 1862, leaving a last will and testament, by which he divided his tract of land into two parts, devising one part to his son Jurian, and the other to his son Adam, the portion upon which was the dwelling house occupied by Francis in his lifetime being devised to Adam.

The passage or roadway passed through each of such farms, and was used and traversed by the said Jurian and Adam Winne continuously and uninterruptedly, each using not only that portion of the passage or roadway which crossed his own farm, but also that portion which crossed the farm of the other.

Adam sold his farm to his son, the defendant, in the year 1885.

Jurian died in the year 1887, and his executor, acting under a power of sale, conveyed his farm to his widow, the plaintiff. The plaintiff and defendant, their employees and tenants, continued to use such passage or roadway uninterruptedly until September, 1902.

During all these years from prior to 1834 until September, 1902, said passage or roadway was well defined, and a portion of the time fenced on both sides, but in later years only on one side. Its use by the owners and occupants of the farms through which it passed has been continuous, uninterrupted, open and notorious; and it has also been used by the neighbors having occasion to pass from one road to the other. The action is for the purpose of restraining the defendant in the use of such roadway.

The passageway in question has been in existence for a period of nearly seventy years, perhaps more, the evidence does not disclose. Whether at the time Francis Winne, the predecessor in title to both parties in this action, acquired the property in question such passageway existed we do not know. If it did, Francis Winne permitted its continued existence and maintained it after he acquired the several properties which constituted his farm at the time of his death; if it did not, he opened such passageway through his property, nearly, if not more than, seventy years ago.

He had entire dominion and control over his farm lands, and might have arranged them at his will. No easement existed so long as the ownership of all was in him, because he might at any time rearrange the passages to and from his dwelling house, or destroy them altogether. But the moment he chose to sell any portion thereof, his right to rearrange ceased, and any purchaser taking from him took all the open, visible burdens and benefits that existed at the time of the purchase.

Where the owner of the land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon the severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance. (*Lampman* v. *Milks*, 21 N. Y. 505; *Simmons* v. *Cloonan*, 81 id. 557; *Paine* v. *Chandler*, 134 id. 385; *Spencer* v. *Kilmer*, 151 id. 390.)

In *Paine* v. *Chandler* (*supra*) it was held that when the owner of land sells and conveys a part thereof he impliedly grants to the grantee all those apparent and visible easements which at the time of the grant were used by said owner for the benefit of the part granted, and which are necessary for the reasonable use thereof, and

it seems to me that the converse of that proposition is true, that when the grantee takes a title to land over and upon which there are apparent and visible easements, he takes such land subject to those easements, and the case becomes much stronger when such grantee has prior to receiving such conveyance been a participator in the use and enjoyment of such easements.

This rule applies to all artificial arrangements which openly exist at the time of the conveyance, and materially affect the value of the premises conveyed, and is not confined to uses absolutely necessary to the enjoyment of the thing granted. (*Spencer* v. *Kilmer*, *supra*, 398.)

Adam and Jurian Winne stood in no different or better position than purchasers of the respective farms would. They took their farms under their father's will subject to the apparent reciprocal burdens imposed upon each, as well as the apparent reciprocal benefits, and their successors in title take them with the same reciprocal benefits and burdens.

In addition to that, the defendant, I think, has acquired a right of way by his own and the plaintiff's acts and those of their respective predecessors in title. He and his have used and enjoyed this passageway since the year 1862, openly, notoriously and uninterruptedly; and there was at least some claim of right under the devises in the will of Francis Winne.

" An uninterrupted use and enjoyment of a right of private way over the land of another for 20 years becomes an adverse enjoyment sufficient to raise a presumption of a grant. The use for 20 years, to be conclusive evidence of right, must have been continuous, uninterrupted and exclusive; that is, under a claim of right, with the knowledge and acquiescence of the owner. The time of the enjoyment is deemed to be uninterrupted when it is continued from ancestor to heir, and from seller to buyer. * * * The use of an easement for 20 years, unexplained, will be presumed to be under a claim or assertion of right and adverse, and not by the leave or favor of the owner." (*Miller* v. *Garlock*, 8 Barb. 153; *Townsend* v. *Bissell*, 4 Hun, 297; *Hinckel* v. *Stevens*, 35 App. Div. 5; *Bell* v. *Hayes*, 60 id. 382; *Hey* v. *Collman*, 78 id. 584; *Colburn* v. *Marsh*, 68 Hun, 269; affd., 144 N. Y. 657; appd., *Fritz* v. *Tompkins*, 168 id. 524.)

The case of *Barnes* v. *Haynes* (13 Gray, 188) was the case of a passageway extending from a street along and upon both sides of the dividing line between two lots, and was the only means of access to the back part of either; it was used uninterruptedly for twenty years by the owners of both lots, without limit, restriction, interruption or objection, or any claim of right, except what might be implied from such use; no mention of any right of way was made in any of the conveyances of either lot. It was held that from such use a grant must be presumed to the owner of each lot, an easement in that part of the passageway which was upon the other lot. The language of Chief Justice SHAW in delivering the opinion of the court seems to me so peculiarly applicable to the facts of this case that I quote a portion of it, viz.: "The use of the common way by each, so far as it was used in and over the soil of the other, was adverse, uninterrupted and used under a claim of right and continued more than twenty years, * * * and thereby each acquired such an easement in that portion of the land of the other which was covered by the way as the other could not lawfully disturb. * * * When such actual uninterrupted use of a way, as of right, is shown to have existed a sufficient length of time to create the presumption of a grant, if the other party relies on the fact that these acts, all or some of them, are permissive, it is incumbent on such party by sufficient proof to rebut such presumption of a non-appearing grant, otherwise the presumption stands as sufficient proof and establishes the right."

This was approved in *Nicholls* v. *Wentworth* (100 N. Y. 455, 461).

In this case no proof was offered to rebut the presumption, and as we have heretofore seen that the use of an easement for twenty years, unexplained, will be presumed to be under a claim or assertion of right, and adverse, and not by leave or favor of the owner.

For these reasons I think the plaintiff is not entitled to maintain her action to restrain the use by the defendant of the way in question.

Let judgment be entered for the defendant.

CHASE, J. (concurring):

Although Francis Winne owned all the real property over which the road in question was maintained, it had previously been divided

into separate farms, and at the time of his death his son, Jurian Winne, one of the devisees in his will, occupied one of the farms as his tenant. By the will Francis Winne treated his real property as separate farms. One he called the "John Winne farm," and the other he called "The homestead farm."

While one cannot have an easement in his own property, the rights which one creates or continues over one portion of his property in favor of another are properly spoken of as *quasi* easements, and the portions of the estate as *quasi* dominant and *quasi* servient. (10 Am. & Eng. Ency. of Law [2d ed.], 419–426.)

Each of the two farms constituting Francis Winne's real property were in his lifetime charged by him with such *quasi* easements. At the time the will was made and thereafter, until Francis Winne died, such *quasi* easements were used by him and by Jurian Winne as a tenant on the John Winne farm, and also by others, for the benefit of each farm, and such *quasi* easements materially affected the value of the separate farms. (See *Spencer* v. *Kilmer*, 151 N. Y. 398.)

It does not seem necessary to say that such road so openly used across said farms was such an essential or reasonably necessary use as to ripen into a burden or benefit on the devisees taking title respectively to the farms under said will. The devisees used said road as it had been used for many years prior thereto. They continued to use the road at pleasure — worked the same as country roads are commonly worked, and treated the same as essential to the reasonable use and enjoyment of their farms respectively. Their use of such road as disclosed by the record is a practical construction by themselves of their rights under the will of their father, and a determination that the *quasi* easements had become easements attached to their farms respectively. The finding of the court, "that such use by both of them was continuous and uninterrupted, and was continued with the knowledge and acquiescence of the owners and occupants of both such farms for a period of over forty years," is sufficient under the circumstances to sustain the conclusion of the trial court that the defendant now has a private right of way across the plaintiff's land.

Parker, P. J., concurred.

HOUGHTON, J. (dissenting):

I cannot concur in the reasoning of either of the opinions upon which this judgment is affirmed. It seems quite plain that neither of the brothers took title to his own farm under the will of his father, burdened with an actual easement of a right of way in favor of the other; nor do I think there was any *quasi* easement which gave to either that right. The question for determination, therefore, is whether each gained as against the other, after both acquired title from the common source, a prescriptive right to pass over the lands of the other. No question of actual necessity for use is presented, for the buildings upon each farm had an outlet to separate public highways.

Title to an easement by prescription presupposes a grant, and a grant is presumed because the use is adverse to the rights of the owner of the land. The ordinary requisites for the creation of an easement by prescription are that the use must be adverse to the knowledge of the person against whom it is claimed; or it must be by a use so open, notorious, visible and uninterrupted that knowledge will be presumed, and that must be exercised under a claim of right adverse to the owner and acquiesced in by him for the proper period of time. It is true that there need not be a claim of right in words, or a declaration that the use is adverse, or an admission on the part of the landowner that he has knowledge of the adverse use and claim of right. The nature of the use and the knowledge of the landowner may be inferred from the manner, character and frequency of the exercise of the right and the situation of the parties. (Jones Ease. § 164.) The peculiar characteristic of the acquiring of an easement by prescription is that it shall be a hostile use, a use against the rights and in violation of the rights of the owner. If this characteristic is wanting and the use is shown to be in fact or by the circumstances connected with it by license or permission or accommodation, then it can never ripen into a prescriptive right. The distinction between that use which may ripen into an easement and that which originates in license and can never have that effect is often difficult to distinguish. In *Pierrepont* v. *Barnard* (6 N. Y. 286) the court, quoting from Kent's Commentaries (Vol. 3, p. 452), says: "A claim for an easement must be founded upon grant by deed or writing, or upon prescription, which supposes one; for it is

a permanent interest in another's land, with a right at all times to enter and enjoy it. But a license is an authority to do a particular act or series of acts upon another's land, without possessing any interest therein. It is founded in personal confidence and is not assignable. * * * This distinction between a privilege or easement, carrying an interest in land and requiring a writing within the Statute of Frauds to support it, and a license which may be by parol, is quite subtle, and it becomes quite difficult, in some of the cases, to discern a substantial difference between them."

The cases of *Martin* v. *Houghton* (45 Barb. 260); *Haight* v. *Badgeley* (15 id. 502); *Bennett* v. *Biddle* (140 Penn. St. 403), and *Hall* v. *McLeod* (2 Met. [Ky.] 98) well illustrate the force given by the courts to neighborly accommodation and family intimacy and brotherly confidence in establishing an actual or presumptive license to use the lands of another.

To my mind the evidence establishes the fact that this right of way was used by each brother with permission of the other, rather than that each used it in hostility to the rights of the other. The two farms, which were used as one by the father, were devised to the two brothers separately, and they were directed to divide the land equally. They found the roadway which their father and neighbors had used. Each continued to use it over his own land as well as that of his brother. There is not a syllable of proof that they ever had any differences over the right of way or any other matter. In an action for services and use of personal property between near relatives, the rule of strict and satisfactory proof that there was an actual bargain to pay in order to overcome the presumption of voluntary service and accommodation, is universally applied by the courts. This is done because the presumption is that near relatives perform services and lend property to be used from affection and kindness rather than with expectation of pay. I see no reason why this same rule should not apply to the passing over real property for convenience. If one of these brothers, living as they did, had sued the other for the use of a plow or a reaper, the courts would have required strict proof that there was expectation to receive and make payment, and this for the reason that it would be presumed that it had been loaned as an accommodation So, too, it seems to me, must it be said that the use, by one, of the

farm of the other for the purpose of convenient passage, must be deemed to have been by permission rather than by hostility. An open, notorious, continuous use of land by a stranger, unexplained, for the period of twenty years, raises a presumption that the use was hostile. But the use is here explained by the circumstances and relations of the parties.

In addition, the findings of the court are not sufficient to sustain the judgment. The only conclusion to which the trial court came, as evidenced by his findings, was that there was a continuous and uninterrupted use for the requisite period with the knowledge and acquiescence of the owners. This is not a finding that there was an adverse possession and use which would ripen into an easement, nor one sufficient to sustain that conclusion. (*Kneller* v. *Lang*, 137 N. Y. 589; *Heller* v. *Cohen*, 154 id. 311; *Lewis* v. *N. Y. & H. R. R. Co.*, 162 id. 221.)

The judgment should be reversed and a new trial granted.

SMITH, J., concurred.