STEPHEN H. OLIN and Others, as Executors of and Trustees
under the Last Will and Testament of ELIZABETH J. LYNCH,
Deceased, Respondents, *v.* HOWARD THAYER KINGSBURY,
Individually and as Sole Surviving Executor of and Trustee
under the Last Will and Testament of SAMUEL FROST,
Deceased, Appellant.

First Department, January 18, 1918.

**Real property — easements — method of acquisition — evidence —**
**easement of necessity — prescription — adverse user — agreements**
**between landlord and tenant — appeal — inconsistent findings —**
**right of appellant to benefit of finding most favorable to him —**
**estoppel.**

In 1870, Nos. 15, 17 and 19 Irving place, in the city of New York, were
separate dwelling houses, leased by their several owners to one tenant
who connected the buildings using them as a hotel. In 1881, when the
leases expired, Nos. 15 and 17 were leased to the same tenant who used
them as a hotel, No. 19 being used as a private dwelling. This con-
tinued until 1890 when the three premises were again conducted as a hotel
by one tenant and have so remained since that time. The tenant of the
three premises has surrendered his lease of Nos. 17 and 19 to the owner
and given him permission to erect a partition wall, which would cut off
premises No. 15, owned by another party, from premises Nos. 17 and 19.
It appears that structural changes can be made to restore No. 15 to the
condition in which it was prior to 1870, and that the whole property is
capable of being separated into its original units and full enjoyment of a
separate use obtained. In a suit by the owner of premises No. 15 against
the owner of premises Nos. 17 and 19, evidence examined, and

*Held*, that the owner of No. 15 has acquired no easement in the use of the
facilities in Nos. 17 and 19, either by grant express or implied, by estoppel
or prescription, nor is said owner entitled to equitable relief preventing
the erection of the partition wall.

There must be a reasonable necessity as distinguished from mere con-
venience in order to establish an easement of necessity.

Except in the case of certain relations that are recognized and enforced in
equity, in analogy to the principles of law applicable to easements, an
easement can be created only by a grant express or implied, or by pre-
scription, and the latter, as modified by the modern doctrine, rests upon
the presumption of a grant.

The modern law of rights acquired by prescription rests upon the adverse
user, for which no permission can be shown, for such a length of time that
a grant will be presumed, which has been lost. In other words, adverse

user will ripen into an easement, as adverse possession would establish a title and upon the same theory of law.

Although a tenant or succeeding tenants may by adverse use of property for the statutory period create prescriptive rights in adjoining property which will inure to the benefit of their landlord, there is no adverse user by the tenant of a lot when he uses two adjoining lots with the express permission of the owner thereof, and still less is there an adverse use by the tenant of the one lot of the two adjoining lots when any use of the latter was made by the tenant of the one lot under a lease of the other lots which gave him express permission to make such use.

A tenant cannot hold adversely to or prescribe against his landlord.

Where findings are inconsistent an appellant is entitled to the benefit of the one most favorable to him.

Separate agreements by owners of several lots, with a tenant, as to the use thereof, are limited to the term of the agreements and the parties thereto and cannot be extended without a new agreement, nor can they inure to the benefit of any one except the parties thereto, their personal representatives or assigns.

Estoppel can only arise where a person has changed his position with relation to or expended money upon his property, relying upon an existing easement in the adjoining property, and without which the act done or the expenditure would have been useless, and the adjoining owner has not interposed to forbid or prevent it.

In order to fasten a limitation upon the free right which each man has to use his property as he desires, and to convey it free from restrictions, except such as he himself imposes, there must be clear and explicit agreement establishing the other's right showing the intention of the person so permanently to burden his property.

SCOTT, J., dissented, with opinion.

APPEAL by the defendant, Howard Thayer Kingsbury, individually and as executor and trustee, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 17th day of October, 1917, upon the decision of the court after a trial at the New York Special Term.

The judgment restrained the defendant from separating premises No. 15 Irving place in the city of New York from premises Nos. 17 and 19 Irving place.

*Howard Thayer Kingsbury* of counsel [*Frederic R. Coudert* with him on the brief], *Coudert Brothers*, attorneys, for the appellant.

*Stephen H. Olin* of counsel [*John C. Clark* with him on the brief], *William G. Murphy, Jr.*, attorney, for the respondents.

PAGE, J.:

In 1870, Nos. 15, 17 and 19 Irving place were separate dwelling houses and were at that time leased by their several owners to one Wehrle, who connected the buildings, using them as a hotel. When the leases expired in 1881, premises Nos. 15 and 17 were leased to the same lessees, who used the two as a hotel, premises No. 19 being used as a private dwelling. This continued until 1890, when the three premises were again united in one tenant and conducted as a hotel, and have been so conducted to the present date.

The plaintiffs are owners of premises No. 15 Irving place and the defendant is owner of premises Nos. 17 and 19 Irving place. The tenant of these three premises surrendered his lease of premises Nos. 17 and 19 to the defendant and gave him permission to erect a partition wall which would cut off premises No. 15 from premises Nos. 17 and 19.

The Special Term decided that the plaintiffs were entitled to an injunction on the ground that there had arisen an easement by necessity, and while the physical destruction of the property or a substantial change in it so that it could not subserve its original purpose would terminate the easement, the easement attaching to the buildings and not to the soil, there was not sufficient evidence that the buildings were at the present time unsuited for hotel purposes.

The court has found that the facilities of premises Nos. 17 and 19 are essential to the enjoyment of premises No. 15, saying: " If a partition wall should be put on the dividing line between Nos. 15 and 17, as is threatened by the defendant, the house on No. 15 would occupy the whole lot, would have no front entrance or hallway, no elevator or kitchen range, or kitchen chimney or heating plant or water supply or electric light."

" The elevator, heating plant, ranges, boilers, kitchen flue, electric meter, pump and hot water tank and other fixtures and the use of the public rooms and hallway contained in Nos. 17 and 19 [are] necessary to the reasonable enjoyment of No. 15."

These facts are insufficient to establish an easement of necessity, even if the other essentials to the creating of an easement had been present. Structural changes that would

restore No. 15 to the condition it was in prior to 1870 can be made. These may be costly, but the property can nevertheless be put to any reasonable use of which it is susceptible, and its use fully enjoyed without imposing any easement or burden on the defendant's land. " While absolute physical necessity need not be shown, as in the case of land-locked premises, or the support of a wall, there must be a reasonable necessity, as distinguished from mere convenience." (*Wells* v. *Garbutt*, 132 N. Y. 430, 438; *Ogden* v. *Jennings*, 62 id. 526, 531. See, also, *Bauman* v. *Wagner*, 146 App. Div. 191, 195; *Scrymser* v. *Phelps*, 33 Hun, 474; *Hill* v. *Bernheimer*, 78 Misc. Rep. 472.) That this property is capable of being separated into its original units, and full enjoyment of a separate use obtained, has been demonstrated. In 1881, as has been stated, No. 19 was separately occupied as a private dwelling after eleven years of use in connection with the other buildings as a hotel. It would undoubtedly be more convenient for the owner of No. 15 to have the property continued to be used in connection with Nos. 17 and 19, but no necessity for such use has been shown.

No easement exists in this case. Except in the case of certain relations that are recognized and enforced in equity, in analogy to the principles of law applicable to easements, an easement can be created only by a grant express or implied, or by prescription, and the latter, as modified by the modern doctrine, rests upon the presumption of a grant. In the case at bar there was never a grant from an owner of either parcel to the other, nor was the property at any time used by a common owner of the fee for hotel purposes.

The cases relied on by the respondents and those cited by Mr. Justice SCOTT may be divided into two classes: *First,* where an owner of land has, by an artificial arrangement prior to a severance, effected an advantage to one portion, to the burdening of the other, upon the severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance; *second,* where an easement has been established by prescription. In the first class are the following: *Humphries* v. *Brogden* (12 Q. B. 739); *Doe* v. *Morrell* (J. Smith [N. H.], 255); *Adams* v.

*Marshall* (138 Mass. 228); *Thompson* v. *Miner* (30 Iowa, 386); *Kane* v. *Templin* (158 id. 24); *Teachout* v. *Capital Lodge of Independent Order of Odd Fellows* (128 id. 380); *Powers* v. *Heffernan* (233 Ill. 597); *Foote* v. *Yarlott* (238 id. 54); *John Hancock Mutual Life Insurance Co.* v. *Patterson* (103 Ind. 582); *Lead City Miners' Union* v. *Moyer* (235 Fed. Rep. 376). In *Humphries* v. *Brogden* (*supra*) the case involved the right of support of a house on the surface from impairment by the operation of a mine. The statement of CAMPBELL, Ch. J., as to the right to support of an upper story of a building by the lower story was dicta. He said: " If the owner of an entire house conveying away the lower story only is, without any express reservation, entitled to the support of the lower story for the benefit of the upper story, why should not an owner of land, who conveys away the minerals only, be entitled to the support of the minerals for the benefit of the surface " (p. 747). Thus demonstrating that the principle which controlled that decision was an implied reservation in the grant from a common owner. In *Doe* v. *Morrell* (*supra*) the house had been erected as one building by the owner of the entire plot. A portion of the land and one-half of the building were sold under execution upon a judgment. It was held, on this severance of ownership, an easement in that portion of the entry, hallway, stairs and chimney, extending beyond the middle line, resulted in favor of the owner of the other half of the house. *Adams* v. *Marshall* (*supra*): The common owner devised two parcels in severalty, the dividing line running through a portion of a barn. The court held that an easement of support and shelter resulted so that one owner could not tear down his portion of the barn without furnishing an equivalent support. The court said, however: " The defendant, we have no doubt, could have lawfully erected a partition through the barn upon his line " (p. 238). In *Thompson* v. *Miner* (*supra*) tenants in common built a building covering the entire premises (consisting of three lots) and having a stairway and hall leading to the upper floors, and in pursuance of an agreement entered into before the building was erected, for the purpose of partitioning the property, one conveyed his interest in two of the lots, and the others conveyed their interest in the one lot to him. Held, this

created an easement of the stairways and halls that were appurtenant to each and all of the lots. Thus this is an easement of implied reservation on the conveyance of a common ownership. In *Kane* v. *Templin* (*supra*) the halves of a building were devised to separate persons. Held, that the two devisees took as purchasers, and that there was an easement by implication in favor of that portion of the building in which there were no stairs or hallway to the use of those that existed in the other portion. The case of *Teachout* v. *Capital Lodge of Independent Order of Odd Fellows* (*supra*) was where there was an express reservation in the grant from the common owner of a right to use the stairways. *Powers* v. *Heffernan* (*supra*): Easement in use of halls and stairways created by implied reservation in grant from common owner. In *Foote* v. *Yarlott* (*supra*), after making separate mortgages on two lots, upon which were erected two buildings, the common owner established a heating plant in one for the use of both. On severance of ownership, by decree of foreclosure, it was held that there was created an easement for the beneficial use of the heating plant. In *John Hancock Mutual Life Insurance Co.* v. *Patterson* (*supra*) there was an implied reservation of an easement in a grant from the common owner, which was also the case in *Lead City Miners' Union* v. *Moyer* (*supra*). It thus appears that none of the cases above which are cited by the respondents are authorities tending to sustain their position in the case at bar, for here the element of a grant from a common owner is lacking.

Many cases are cited by the respondents where an easement has been acquired over adjoining property by prescription. No purpose will be served by reviewing them in detail. The modern law of rights acquired by prescription rests upon the adverse user, for which no permission can be shown, for such a length of time that a grant will be presumed, which has been lost. In other words, adverse user will ripen into an easement, as adverse possession would establish a title and upon the same theory of law. It also follows that if the use is exercised by permission, no matter how long the use may be, it cannot ripen into a permanent right; for, as was said by Judge COWEN, " It is well known that a single lisp of

acknowledgment by the defendant, that he claims no title, fastens a character upon his possession which makes it unavailable for ages. No matter that * * * he and those under whom he claims may have holden peaceably, and without the hindrance, molestation or even claim of the owner. *Non constat*, that the whole may not have been as lessee or by comity, until the owner shall reach the time when for purposes which remained suspended on account · of the mere inconvenience of his neighbor, he comes in for the enjoyment of his conceded rights." (*Colvin* v. *Burnet*, 17 Wend. 564, 568.) The reason for this is clear. If a known right to use the property exists, the user is presumed to be in the exercise of that right, and no other grant of right can be presumed.

This brings us to the question whether the plaintiffs, owners of lot No. 15, have acquired an easement by prescription against the defendant owner of lots Nos. 17 and 19. It is true that a tenant or succeeding tenants might by adverse use of property for the statutory period create prescriptive rights in adjoining property which would inure to the benefit of their landlord, but there is clearly no adverse user by the tenant of lot No. 15 when he uses the adjoining premises, lots Nos. 17 and 19, with the express permission of the owner thereof; and still less is there an adverse use by the tenant of lot No. 15 of premises Nos. 17 and 19 when any use of premises Nos. 17 and 19 was made by the tenant of lot No. 15 under a lease of premises Nos. 17 and 19 which gave him express permission to make the use of it that was made. The latter is true, because a tenant cannot · hold adversely to or prescribe against his landlord. (*Jones* v. *Reilly*, 174 N. Y. 97.) It should be noted in this connection that the court made the following finding in its decision: " All these structural changes were made by the tenants only and under an express permission contained in the several leases of the respective parcels and became the property of the respective owners under the terms of such · leases. No alterations or additions were made by the owners or either of them."

There were none of the elements in this case from which an easement by agreement might be predicated.

There was no direct evidence of an agreement between the owners in regard to the use of the premises as a hotel, and an agreement could be established only by inference. In

this connection the following findings of fact made by the court should be noticed:

" 33. There was an agreement between the plaintiffs and the defendant and between the plaintiffs and the defendant's predecessors that the building upon the said three lots should be used as a hotel."

" 37. The respective owners of No. 15 on the one hand and of Nos. 17 and 19 on the other, have at no time acted conjointly in regard to the property, or entered into any agreement with each other in respect to its joint or combined use or otherwise, but each owner has at all times dealt separately and independently with his own property and with the tenant or tenants thereof."

Since these findings are inconsistent, the defendant appellant is entitled to the benefit of "37," the one most favorable to him. (*Whalen* v. *Stuart*, 194 N. Y. 495; *Kinney* v. *Kinney*, 221 id. 133.) Aside from this, there is no evidence tending to sustain the first. The only agreements that were made were the separate agreements with the tenant by each landlord that the tenant could use the demised premises for a hotel in connection with the other premises. This agreement would be limited to the term of the lease, and the parties thereto. It cannot be extended beyond the term without a new agreement, nor could it inure to the benefit of any one except the parties thereto, their personal representatives or assigns.

Lastly, the plaintiffs claim that they have acquired an easement by estoppel. But estoppel can only arise where a person has changed his position with relation to, or expended money, upon his property, relying upon an existing easement in the adjoining property, and without which the act done or the expenditure would have been useless, and the adjoining owner has not interposed to forbid or prevent it. In such cases equity has interposed and enjoined the adjoining owner from interrupting the enjoyment of the easement. The necessary elements to establish such an estoppel are lacking in this case. First, the owner of No. 15 has not changed his position, relying upon the joint use of the property with Nos. 17 and 19. The leases by both owners were coterminous and were merely a permission of the tenant to so use the property during the period of the lease. Neither made any

alteration in the premises or expended any money thereon. Such changes as were made were the act of the tenant for his more convenient use of the premises, and were done with the separate consent of each owner and related to the use of his own premises. It was limited by the terms of the lease, and there was no agreement express or implied that the owner should continue such use after the term of the lease, or so long as each expressed this consent, with like limitations, by a renewal thereof. . The plaintiffs rely upon the case of *Fronckowiak* v. *Platek* (152 App. Div. 301), which is clearly distinguishable from the instant case and comes clearly within the general rule above stated. In that case a husband and wife purchased property in 1881 upon which they erected an addition to the building. Connected with this addition were sheds and outbuildings. These buildings were all used together and occupied continuously by them until the death of the husband intestate in 1906, and thereafter by the wife until her death in 1910. " The wife equally with the husband contributed to the cost of erecting these additions. With him she paid the taxes on this twenty-foot strip. They were acting for the mutual benefit of the two lots. She was willing to contribute to the building and maintenance of these additions, and he was willing that they should be appurtenant to the main premises. If the situation were presented between the husband and the wife, he would at this late day be estopped to repudiate his affirmative acts in affixing these buildings to the store and dwelling on the lot they owned as tenants by the entirety." (p. 303.)

In my opinion it is clear that the plaintiffs, as the owners of No. 15, have acquired no easement in the use of the facilities in Nos. 17 and 19 either by grant, express or implied, by estoppel, or prescription. It only remains to be considered whether the plaintiffs, while not entitled to relief in damages in a court of law, have nevertheless acquired such rights under purely equitable consideration that a court of equity might interpose injunctive relief. No such right is claimed by respondents, but Mr. Justice SCOTT seems to be impressed with the idea that the long-continued use of this property as a hotel has given the plaintiffs a claim to equitable consideration. It is not necessary to cite authorities for the

familiar situation that arises when the several owners of a tract of land, or upon the same street, agree with each other that only a certain class of buildings shall be erected thereon, or that certain businesses or trades shall not be permitted to be carried on, or that the houses to be built shall not be built within a specified distance of the street; and equity will intervene to prevent a violation of such an agreement, even by subsequent owners, although there is neither privity of contract nor of estate between the one seeking the injunction and those who attempt to appropriate the property in contravention of the use or mode of enjoyment impressed upon it by the agreement of which they had notice. But to fasten a limitation upon the free right that each man has to use his property as he desires and to convey it free from restrictions except such as he himself imposes, there must be a clear and explicit agreement establishing the other's right and showing the intention of the person so permanently to burden his property. No such agreement exists in this case. Each owner gave permission to the tenant, by separate lease, to use the property during the term of the lease. At the expiration of the lease each owner received back his property and was free to make such lawful use thereof as he deemed proper. Neither owner obtained rights thereby, in or over the premises of the other, that survived the termination of the leases, either in law or equity.

The judgment should, therefore, be reversed, with costs, the findings inconsistent herewith reversed, and judgment granted for the defendant, with costs.

CLARKE, P. J., SMITH and SHEARN, JJ., concurred; SCOTT, J., dissented.

SCOTT, J. (dissenting):

The defendant appeals from a judgment in equity which, in effect, decrees that two adjoining properties owned by different owners shall continue to be maintained and used, as they have been for many years, as a single building.

The facts are peculiar and so far as we are aware are not exactly paralleled by any reported case. Taken together the properties constitute a plot on the northwest corner of Fifteenth street and Irving place in the city of New York,

sixty-two feet six inches in width on Irving place and eighty feet in depth. The corner lot, which is twenty-two feet in width on Irving place, and was formerly known by the street number as No. 15 Irving place, is owned by plaintiffs as trustees. The remainder of the property, which is forty feet and six inches in width on Irving place, and was formerly known by the street numbers as Nos. 17 and 19 Irving place, belongs to the defendant as trustee.

Prior to the year 1870 there stood upon the property three private dwelling houses, each of which was complete in itself and had a separate entrance on Irving place. No. 15, on the corner, was then owned by Edward J. Lynch; No. 17 by Samuel Frost, and No. 19 by Mattie G. Brown. The latter property was purchased in 1882 by Samuel Frost, who thereafter, and until the time of his death, owned both Nos. 17 and 19.

In the year 1870 Edward J. Lynch leased his house and lot to Joseph Wehrle for the term of ten years, with the privilege of ten years' renewal. In the same year Samuel Frost leased No. 17 to the same Joseph Wehrle for the term of ten years, with privilege of renewal, the lease containing a stipulation that the property should be used for no " business or purpose which shall be more injurious to the said premises than the general hotel business." In the year 1872 Mattie G. Brown leased No. 19 to the same Joseph Wehrle for the term of eight years, with the privilege of renewal for ten years. This lease contained a stipulation identical with that in the above-mentioned lease from Samuel Frost as to the use of the property for no business or purpose more injurious than the hotel business.

Joseph Wehrle, having thus become the tenant for a term of years of all three properties, proceeded to make extensive and radical alterations therein with the purpose and effect of combining them into a single building which he used during the continuance of his term as an hotel under the name of the Hotel Belvidere. These alterations may be briefly summarized as follows: A mansard roof was constructed over all of the buildings. A basement and four-story addition with mansard roof was built over the rear of No. 15 (the corner lot), so that the hotel building covered and now covers the entire lot. This extension served as a kitchen in the

basement, and a dining-room on the main floor, the upper floors being subdivided by lath and plaster partitions. The middle house (No. 17) was used for the main entrance to the hotel. The front door and hallway were done away with and the front steps removed. The hotel entrance was so constructed as to extend across the whole front of No. 17, such entrance consisting of a door with side windows on which the names successively used for the hotel were painted.

The interior was arranged for the use of the whole property as one hotel. The main floor of No. 17 served for the entrance hall, and in that building were and are located the heating plant for the whole property; the elevator giving access (through openings cut in the walls) to all parts of the hotel; the ranges, boilers and kitchen flue as well as the electric meter. The drainage system for the whole property passes under No. 15 to Fifteenth street, and in the cellar of that portion of the property is a water meter which supplies the pump and hot water tank in No. 19 which controls the water supply to all parts of the whole building.

This was the condition of the property when Joseph Wehrle's lease expired. He did not exercise the privilege to renew. From the date of the expiration of his leases down to now the property has been in appearance and in fact a single building used for an hotel; the several owners, although apparently entering into no formal agreement between themselves as to leasing to the same person, always contrived so to lease their properties that they always had the same tenant, and this tenant has always used the property as a single, entire building under the name Hotel America, or Hotel du Nord.

It was abundantly shown by the evidence that if the property continued to be used in the future as in the past, as a single building, for hotel or some other purpose, it would have a reasonably adequate rental value, but if broken up into separate and disconnected properties, the buildings, and especially that portion consisting of what was formerly No. 15, belonging to plaintiffs, would be wholly valueless for any usable purpose, since it would be economically impossible to restore it to its former condition as a dwelling house with any hope of realizing an adequate and reasonable return upon the cost.

The defendant now contemplates selling so much of the property as was formerly known as Nos. 17 and 19 Irving place, and to that end proposes to erect a dividing wall between the corner lot (No. 15) and said No. 17 so as to cut off and wall up all the openings in the present walls between said parts of said hotel building, and to cut off and separate said corner building (No. 15) from the use of the main entrance and hallway, and the enjoyment of heat, gas, electric light and water furnished by the apparatus and appliances situated in Nos. 17 and 19, as the same have for many years been used and enjoyed by the common tenant of the whole property for the benefit of the corner lot. In short, it is the defendant's purpose to absolutely segregate that portion of the property owned by him from that portion owned by the plaintiffs, in such a manner as to render impossible the continued use of the whole property as a single building. The judgment appealed from enjoins this segregation. It may be said at the outset that neither landlord acquired any prescriptive rights against the others in consequence of the acts of Wehrle, who was the common tenant, holding under separate leases, for a tenant cannot take by adverse holding or by prescription against his landlord (*Jones* v. *Reilly*, 174 N. Y. 97, 107), nor can he transmit any such right to another.

The rights of the respective owners, as against each other, arose, if at all, when the property came back into their hands upon the expiration of Wehrle's leases in 1881, in the condition in which he had put it, and are to be established, if at all, by their dealings with the property during the period, exceeding thirty years, which has since elapsed. Of course the fact that the buildings had been transformed in use and appearance into one was obvious and patent as was the fact that the character of the property had been radically altered so that it was then no longer adapted to use as a block of single dwelling houses, and was adapted only for some use as a single building. But the acquiescence of the several owners to the use of the reconstructed building as a unit for the purposes of an hotel need not be deduced only from their knowledge of the use to which it was in fact put, but is expressly shown by many leases and consents to assignments

of leases, executed by one owner after another in which the use of the several properties as parts of the hotel is expressly recognized and stipulated for.

It may fairly be said from the evidence and findings that the owners of what were originally three houses finding their properties transformed into a single house under one roof and so arranged internally that every part of that house was dependent upon every other part, accepted and acquiesced in this reconstruction and interdependence for thirty-five years or more, all that time reaping an advantage from the existing arrangement. The question we have to consider is whether one owner, after having for so long a period recognized and profited by the mutual advantages flowing from the use of the property as a single building, may at will destroy the existing arrangement and segregate the properties to the detriment of the other owner. That either owner could have insisted upon physically segregating the properties when Wehrle's leases expired, or within twenty years thereafter, I do not doubt, but I am disposed to think that the recognized and accepted condition and use of the property had after twenty years established certain mutual rights as between the owners of the several parcels which neither is at liberty to disregard to the detriment of the other. From the history of the property as above detailed we should presume a grant or agreement between the owners that, so long as the building stood, it should continue to be used as a single building, each part enjoying the benefit to be derived from the mutual arrangement of all the parts.

It would serve no useful purpose to discuss at length the manner in which one owner may acquire by prescription, or presumed grant, the right to use his neighbor's land for the benefit of his own tenement. That such right may be acquired by long-continued user by the owner of the dominant tenement, coupled with knowledge and acquiescence by the owner of the servient, is settled. The books are full of cases in which this principle has been applied. Sometimes the right is exclusively for the benefit of the dominant tenement, and the burden borne solely by the servient. Such are the common cases of rights of way and rights of drainage. Sometimes the rights are mutual and reciprocal, each tenement being burdened

for the benefit of the other, and each being benefited at the expense of the other. Such in general are cases of party walls. , Nor are cases unknown to the law in which separate owners hold different parts of the same house, as for instance different stories. In such cases it has long been recognized law that neither owner may do anything within his own part or story which shall impair the safety or enjoyment of their parts or stories by the other owners. (*Humphries* v. *Brogden*, 12 Q. B. 739; and see Washb. Ease. & Serv. 480, 481.) According to this rule if the parties to the present action had owned different floors or stories of the whole building, instead of owning different parts thereof as they do, it would seem that neither could deal with his own part as to cut off that part owned by the other party and thus render it unusable and valueless. An interesting application of this rule arose in New Hampshire in 1809. D. and M. each owned one-half of a dwelling house. It had been built altogether; two rooms on a floor, chimney in the middle, entry on the front side, from which led stairs to both chambers and entrances into both rooms. The division was by an imaginary line running through the middle of the front door, entry, stairs, chimney, etc. The house was old and needed repairing. M.'s part was not worth repairing, but D.'s part was tenantable. The fire-wards upon view of M.'s part were of opinion that it was dangerous for want of repairs and ordered it to be repaired or otherwise rendered not dangerous on account of fire. M. elected to take down his part to the line. He left the materials of the entry for D.; he sawed through the plate girds, stairs, etc., but did not take down the chimney. All those things he did carefully, doing as little damage as possible to D.'s part of the house. D. sued for damages for trespass. It was held that he could recover. SMITH, Ch. J. (with whom all the other judges concurred), said: " I am inclined to think that each of the parties were interested in the entry, stairs, chimney, etc., and that neither could destroy these without the consent of the other; that each of these owners was under an obligation to the other to keep his part in repair, at least so far that the tenement of the other should suffer no injury from want of such repair. It may be likened to the case of a party wall which neither owner can remove. * * *

" From the nature of the thing, these parties · must be considered as interested, as it were, in common, in the entry, chimney, stairs, etc.; and neither could destroy that in which the other had a valuable interest.

" Doe had an easement, or right of enjoyment, of that part of the entry which was beyond the middle line, which does not depend on the courtesy of the defendant; it is a matter of right. It is for the interest of both parties that this should be the case. It may be said the owner may do what he will with his own   *   *   *.   But the truth is, it is not his own in an absolute, exclusive sense, because Doe has a right to the enjoyment of it." (*Doe* v. *Morrell,* Smith [N. H.], 255.)

In *Thompson* v. *Miner* (30 Iowa, 386) is presented a case similar in some aspects to the present in that a building was erected to cover three lots in such manner that it could be most adequately used together as a single building. The lots upon which the building stood passed into several ownership, but it was held that one owner could not cut off from that portion of the building belonging to the other owners the access provided by the stairs and passageways which were constructed on his part of the building. To the same effect is *Kane* v. *Templin* (158 Iowa, 24) where halves of a single building had been granted to different devisees. It was held that an easement existed for the use of the halls and stairways which stood in one half, for the benefit of the other half.

In many other cases the principle applied in the foregoing has been recognized and applied. (*John Hancock Mutual Life Ins. Co.* v. *Patterson,* 103 Ind. 582; *Foote* v. *Yarlott,* 238 Ill. 54; *Lead City Miners' Union* v. *Moyer,* 235 Fed. Rep. 376.) It is true that the facts in the cases cited are not identical with the facts in the case at bar and that in most of them the easements were created while the properties benefited and burdened were held in the same ownership where the use, which ripened into an easement, had its origin. But this does not affect the principle applicable to the facts we now have to consider. The only difference between easements arising upon the severance of an estate theretofore held in unity of ownership, and easements affecting properties held separately and never united in ownership, is as to the manner in which the ease-

ment is created. In theory all easements rest on grant, some-times, although rarely, actually embodied in a deed, but much more frequently implied or presumed. (Washb. Ease. & Serv. *32; *Nichols* v. *Luce*, 41 Mass. [24 Pick.] 102.) If an owner so builds upon or disposes of his property that one part is openly and continuously burdened with a use in favor of another part, and then severs the property and sells that part in favor of which the use has been established, retain-ing that upon which the burden rests, a conveyance of the right to continue the use will impliedly be found in the con-veyance of the part granted, and the grantor will be estopped to deny that he intended to include in his conveyance the right to continue to enjoy the use. So when the owner of one parcel acquiesces, for twenty years or more, in the open, notorious and continuous use of his property for the benefit of the property of his neighbor it will be conclusively pre-sumed that at some time a grant of the right had been made, and a like presumption will arise when two owners of adjoin-ing parcels have for the requisite period of time enjoyed and exercised mutual and reciprocal beneficial uses over the property of each other.

While the law reports in this State are replete with cases dealing with the creation and enforcement of easements I have been able to find but one which resembles in its peculiar facts the one we are now considering. In that case it appeared that Bartholomew Karalus and his wife Katarzyna purchased a corner lot in the city of Buffalo which they owned jointly. Upon this lot they erected a building which they occupied as a saloon, grocery and dwelling house. Subsequently the husband individually acquired title to an adjacent lot. The two lots were inclosed with a fence and used and occupied as one tract, and the husband erected upon the lot acquired by himself individually an addition to the building erected on the corner lot. Connected with this addition were a shed, out-houses and a large woodshed. These buildings were all used together by the husband and wife, until the death of the former, twenty-five years after the properties had first been united in use. Later the wife died bequeathing her property to the plaintiffs. The husband having died intestate and without descendants, his heirs, after the wife's death, partitioned his

property. The defendants in the action bought the lot which the husband had acquired individually and had used in conjunction with the corner lot. The plaintiffs sought to impress an easement in this second parcel for its use in connection with the corner lot, which as it was claimed were inseparably connected, and all had been used together continuously and notoriously for nearly thirty years. The Appellate Division in the Fourth Department sustained the plaintiffs' contention, speaking through Mr. Justice SPRING, as follows: " I think the long occupancy in connection with the first lot, openly, notoriously and continuously, ripened by adverse user into a definite easement, and that the presumption of a grant is conclusive therefrom. (*Colburn* v. *Marsh*, 68 Hun, 269; affd., on opinion below, 144 N. Y. 657; *Hey* v. *Collman*, 78 App. Div. 584; affd., 180 N. Y. 560; *Fritz* v. *Tompkins*, 168 id. 524.)

" The rule is stated in this language in *Winne* v. *Winne* (95 App. Div. 48; affd., 184 N. Y. 584) at page 50: ' Where the owner of the land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon the severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visibly attached at the time of the conveyance.' * * *

" If the situation were presented between the husband and the wife, he would at this late day be estopped to repudiate his affirmative acts in affixing these buildings to the store and dwelling. * * *

" The part of the building, for the various additions are so attached as to constitute one building, cannot now be severed without materially diminishing the value of the first tract purchased. * * * The substantial character of the part added, its necessity for the beneficial use of the first property purchased and the manner in which it was joined to the first building denote that these two people intended that the entire building should remain as erected as an appurtenant to the first lot." (*Fronckowiak* v. *Platek*, 152 App. Div. 301.)

It may be noted in regard to the case last quoted that although there had been a partial unity of ownership, the court preferred to rest its decision upon the long-continued and notorious use.

Applying the foregoing rules and illustration of the application in previous cases to the case at bar, I am of opinion that the plaintiffs are entitled to the protection which they seek and which has been awarded to them by the judgment appealed from. The separate owners not only adapted their buildings to a common use, or, what amounts to the same thing, adopted and acquiesced in the adaptation thereof made by their common tenant, but for more than thirty years have continued its use as a single building and have, more than once, stipulated expressly that their separate properties shall be used as part of an hotel which occupied the entire property. Out of this long acquiescence has grown, as I consider, a conclusive presumption that the use of the building as a whole, and the interdependence of each part upon every other part had origin in mutual and reciprocal grants between the owners. Neither owner can now, as I apprehend, lawfully destroy the mutual and reciprocal easements established by long acquiescence, to the detriment and damage of his neighbor's property. If it be said that the continuance of this state of affairs threatens to make the management of the property difficult, the answer is that the owners for some forty years have managed to use the property profitably in the precise condition in which the judgment appealed from would leave it.

The appellant calls our attention to an apparent contradiction between the 33d finding of fact to the effect that there was an agreement between the owners that the building in question should be used as an hotel, and the 37th finding to the effect that the respective owners had at no time entered into any agreement with respect to the joint or combined use of the properties. The contradiction is more apparent than real. In the 33d finding the court evidently referred to the presumed agreement resulting from long-continued use and acquiescence. In the 37th finding the court evidently meant to find that no formal agreement had been entered into between the owners. It should be amended to as to express that meaning clearly.

The judgment should be affirmed, with costs.

Judgment reversed, with costs, and judgment ordered for defendant, with costs. Order to be settled on notice.