The John Hancock Mutual Life Insurance Company v. Patterson.

No. 11,855.

## THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY v. PATTERSON.

EASEMENT.—*Servitude Imposed by Owner.*—*Severance.*—*Continuance of Use by Implication of Law.*—Where the owner of an estate imposes upon one part of it an apparently permanent and obvious servitude in favor of another, and at the time of severance of ownership such servitude is in use and is reasonably necessary for the fair enjoyment of the other, then, whether the severance is by voluntary alienation or by judicial proceedings, the use is continued by operation of law. *Aliter*, where the arrangement is merely temporary or provisional.

SAME.—*Mortgage.*—*Foreclosure.*—One who takes a mortgage on a lot upon which there is a house and appurtenances resting partly upon an adjoining strip of ground owned by the mortgagor, and which is fenced in with and forms a part of the same enclosure, but is not described in the mortgage, such mortgagee, on acquiring title by foreclosure and sale, takes by implication of law an easement to the use of so much of such strip of ground as is made reasonably necessary by the character of the servitude.

From the Marion Superior Court.

*J. S. Tarkington* and *U. J. Hammond*, for appellant.

*W. Patterson*, for appellee.

MITCHELL, C. J.—This suit was brought by Patterson against the insurance company to quiet title to a strip of ground five feet in width in the city of Indianapolis. Shortly stated, the facts found by the court, necessary to present the question for decision, are as follows: On the 20th day of October, 1876, John Patterson was the owner of a parcel of ground, the proper description of which was, lots two, three, four, and five feet off the north side of lot five, in Brockway's subdivision of out-lots eighty-four and eighty-five, in Blackford's subdivision of out-lot numbered one hundred and fifty-four, in the city of Indianapolis. These several descriptions lay contiguous to each other, forming a body with a frontage of ninety-five feet on California street, extending back one hundred and fourteen feet. The ground was divided by fences into three separate parcels or enclo-

sures, each having upon it a house with necessary appurtenances, the houses being numbered respectively 293, 297 and 301. Desiring to obtain a loan from the insurance company, Patterson made a written application in which he stated that he would give, as security, a mortgage on "Nos. 293, 297 and 301, on California street, land measuring ninety-five feet on the street, extending back one hundred and fourteen feet; containing —— square feet; value $75 per front foot; buildings, three dwelling-houses built of wood," etc. An appraisement was made, the appraisers valuing the land at $60 per foot, amounting to $5,700, and the improvements at $5,-000. The company's agent examined the property with Patterson, who pointed out to him Nos. 293, 297 and 301, including the yards and appurtenances enclosed with each, and after such examination the agent advised that the loan be made on the security of the property. Patterson thereupon caused an abstract to be prepared and furnished the same to the attorney of the insurance company. On the abstract furnished the property was described as lots two, three and four, in the subdivision above mentioned. A mortgage was thereupon prepared by the company's attorney, in which the description on the abstract was followed; which omitted any mention of the five feet off the north side of lot five.

The mortgage was duly executed by Patterson and wife, and the loan made by the insurance company in the belief that the description in the mortgage covered the ninety-five feet, with the houses and appurtenances as pointed out. Subsequently, the debt falling due, the mortgage was foreclosed, the property sold under the decree and bid in by the insurance company for the full amount of its debt, interest and costs, which amounted to $5,829.70. The decree and sale followed the description contained in the mortgage, the company all the while supposing that such description embraced the ninety-five feet, with the houses as above numbered, and the plats or enclosures with each, as they appeared. Patterson remained in possession until the year for redemption ex-

pired, when the company received a sheriff's deed, and went into and still remains in possession of the whole, Patterson becoming tenant of No. 293.

It was found that the house on No. 293 rests upon some part of the north margin of the five-foot strip which was not embraced in the description as written in the mortgage and subsequent proceedings under it, and that some of the appurtenances to the house were also on this strip, and that the whole strip was fenced in with, and formed a part of, the yard and enclosure, but to what extent the house rests on this strip the court was unable to find from the evidence.

About the time the foreclosure proceedings were commenced, Patterson conveyed the five-foot strip to his mother, Nancy Patterson, in payment of a valid antecedent debt, and she afterwards conveyed it to the appellee, Clide S. Patterson, who paid nothing for it.

There was no attempt at any time to reform the mortgage, nor is there any claim that it should be reformed. There is no finding that Patterson was guilty of any fraudulent representation or concealment, except as the same may be inferred from the facts above stated.

The question now is as to the respective rights of the parties in the five-foot strip.

On behalf of the insurance company, it is claimed that because part of the house, No. 293, rested on the margin of this strip, and other parts of it were occupied by appurtenances to the house, and the whole of it formed a part of the yard and enclosure at the time the mortgage was made and the proceedings and sale under it were had, the whole strip, or at least an easement in it, passed to the purchaser under the mortgage. Counsel, stating their position, say: "If Patterson owned lot number four, and five feet off of the north side of lot five, and the dwelling and appurtenances upon lot four, and said five feet were all in one enclosure as one yard or parcel, and through, by and under him, appellant has derived title to lot four, and possession of the house, with the

enclosed yard, or parcel, and appellee has not shown what, if any, part of said five feet is not occupied by said house and appurtenances (he having the burden), the plaintiff, deriving his subsequent title from said John Patterson, can not recover because the dwelling-house, well, coal-house, etc., constituted an *apparent easement,* to which said five feet was in servitude."

Counsel say further : " It is not sought to reform the mortgage, but to establish by facts and circumstances the location of the property sold at sheriff's sale, that is, finding lot four, you find the five feet enclosed with it, and the dwelling-house upon it and the five feet, and then find that the owner of both parcels conveyed them to different persons at different times, the house with the appurtenances remaining on both. We show by the fact that the five feet were necessary to the support and use of the house, and so were embraced in the mortgage and sheriff's deed to appellant."

On behalf of the appellee, it is contended that as neither the five-foot strip of land nor any interest in any part of it is embraced in the description contained in the mortgage, and the proceedings had under it, nothing passed by implication of law outside the line of the boundaries described.

Presumably, the mortgage contained the usual covenants, but as no mention was made in it of the land here in dispute, or of any right or interest in it, the question is, did any right to or interest in it pass by operation or construction of law?

Upon the subject of easements passing by implied grant, much discussion is found, and while substantial agreement exists as to general rules, considerable uncertainty prevails in their application to particular cases.

As applied to easements in respect of light and air, the subject has been considered and decided by this court. *Stein* v. *Hauck,* 56 Ind. 65 (26 Am. R. 10). We are not aware that the precise question here involved has received the consideration of the court before. The reasons which control the subject of implied grants, when applied to light and air, are not controll-

ing when such grants are based upon necessity, or the use of actual, visible arrangements and appurtenances annexed to, or adopted by an owner for the apparent and permanent benefit and use of the estate. As a basis for the application of the doctrine, there must have existed a unity of seizin, and a disposition and arrangement of the several parts of one estate with relation to each other, followed by a severance in the ownership. During the unity of title, the owner may subject one of several tenements or adjoining parcels of land to such arrangements, incidents or uses, with respect to the other, as may suit his taste or convenience, without creating an easement in favor of the one as against the other. This is so because the owner can not have an easement in land of which he has the title. The inferior right is merged in the higher title. By the common law it is said to be extinguished by the unity of title. In the civil law it is lost by "confusion." By both, if the easement existed before the unity of seizin, it may revive upon a severance, or, if none existed, such arrangements may be adopted while the seizin is united, as that upon a severance an easement will be created by implication of law.

Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made. *Lampman* v. *Milks*, 21 N. Y. 505; *Kieffer* v. *Imhoff*, 26 Pa. St. 438; *Pennsylvania R. R.*

*Co.* v. *Jones*, 50 Pa. St. 417; *Phillips* v. *Phillips*, 48 Pa. St. 178; *McCarty* v. *Kitchenman*, 47 Pa. St. 239; Washb. Easements, pp. 56, *et seq.*, 619.

The learned author above cited says, p. 81, quoting from the note to *Pearson* v. *Spencer*, 1 Best & Smith, 571 : " It may be considered as settled in the United States, that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents of property which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general ownership."

So, also, it was said by Chancellor Kent : " Some things will pass by the conveyance of land as incidents appendant or appurtenant thereto. This is the case with the right of way or other easement appurtenant to land. * * And if a house or store be conveyed, every thing passes which belongs to, and is in use for it, as an incident or appurtenance." 4 Kent Com. 467.

In the case of *United States* v. *Appleton*, 1 Sumner, 492, it was said : " It is observable, that in this case reliance is placed on the language of the grant ' with all the ways,' etc. But this is wholly unnecessary ; for whatever are properly incidents and appurtenances of the grant will pass without the word 'appurtenances,' by mere operation of law." *Morgan* v. *Mason*, 20 Ohio, 401; *Morrison* v. *King*, 62 Ill. 30; *Newman* v. *Nellis*, 97 N. Y. 285.

The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties; the underlying principle in such cases being that, included in the grant of the principal, are all such privileges and appurtenances as are

obviously incident and reasonably necessary to the fair enjoyment of the thing granted, substantially in the condition in which it is enjoyed by the grantor, unless the contrary is provided.

A mere temporary or provisional arrangement, however, which may have been adopted by the owner for the more convenient enjoyment of the estate, can not constitute the degree of necessity or permanency which would authorize the engrafting upon a deed, by construction, of a right to the enjoyment of something not within the lines described. To justify such construction, it must appear from the disposition, arrangement and use of the several parts, that it was the owner's purpose in adopting the existing arrangement to create a permanent and common use in the one part for the benefit of the other, or for the mutual benefit of both, and it must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership. *Francies's Appeal,* 96 Pa. St. 200.

Where such arrangement is visible, and apparently designed to be permanent, and is valuable and reasonably necessary to the enjoyment of the parcel granted, the parties will be presumed to have contracted with reference to the condition of the property at the time of the grant, " and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." *Curtiss* v. *Ayrault,* 47 N. Y. 73. *Butterworth* v. *Crawford,* 46 N. Y. 349 (7 Am. R. 352); *Cave* v. *Crafts,* 53 Cal. 135.

The rule above stated was applied with some degree of liberality in the notable case of *Pyer* v. *Carter,* 1 H. & N. 916, the authority of which, although denied in the later case of *Suffield* v. *Brown,* 4 DeG. J. & S. 185, is nevertheless in principle generally accepted in this country, with some qualification as to the degree of necessity required in order to authorize the inference of a grant or reservation by implication. In the following cases it was held that nothing short of absolute necessity would authorize such inference : *Carbrey* v. *Willis,* 7

The John Hancock Mutual Life Insurance Company *v.* Patterson.

Allen, 364; *Randall* v. *McLaughlin*, 10 Allen, 366; *Buss* v. *Dyer*, 125 Mass. 287; *Warren* v. *Blake*, 54 Maine, 276.

It may be inferred that the rule in *Pyer* v. *Carter*, *supra*, might have been looked upon with more favor by the learned courts, in the cases above cited, if, as in the case under consideration, it had been sought to apply it to grants of the dominant estate. *Dillman* v. *Hoffman*, 38 Wis. 559; Washb. Easements, p. 71. Whether this inference is justified or not, we think the weight of authority, in cases like this, sustains a rule less exacting than that of strict and indispensable necessity. *Henry* v. *Koch*, 80 Ky. 391 (44 Am. R. 484); *Cannon* v. *Boyd*, 73 Pa. St. 179; *Simmons* v. *Cloonan*, 81 N. Y. 557; *Ingals* v. *Plamondon*, 75 Ill. 118; *Rogers* v. *Sinsheimer*, 50 N. Y. 646; *United States* v. *Appleton*, 1 Sumner, 492; *Janes* v. *Jenkins*, 34 Md. 1 (6 Am. R. 300).

The degree of necessity is to be determined rather by the permanency, apparent purpose, and adaptability of the disposition made by the owner during the unity of title, than by considering whether a possible use can be made of the parcel granted, after a discontinuance of the right formerly exercised over the other. *Dunklee* v. *Wilton R. R. Co.*, 24 N. H. 489; *French* v. *Carhart*, 1 N. Y. 96.

Whether the continuance of the previous use is indispensable to the future enjoyment of the estate granted in the condition it was in when severed, the practicability and effect of new adjustments, and the expense involved in making them, while not conclusive, may properly be taken into account, not for the purpose of determining the necessity of a continuance of the use, but to illustrate the degree of probability that the purchaser, as a reasonable man, took the conveyance with the expectation that the existing use would be continued. The particular facts and the situation and disposition of the estate in each case must control.

The reasonable application of the doctrine, as we deduce it from the authorities, however, leads to the general conclusion that if the service imposed on one, during the unity

of possession of two parcels of land, was of a character look-
ing to permanency, and the discontinuance of such service
would obviously involve an actual and substantial rearrange-
ment of that part of the estate in whose favor the service
was imposed, to the end that it might be as comfortably en-
joyed as before, then such a degree of reasonable necessity
would seem to exist as would raise an implication that the
use was to be continued.

If, on the other hand, the arrangement was of an indifferent
or probably temporary character, having no apparent adapta-
bility to use for the several parts in the situation in which
they are, and the continuance of which, while obviously det-
rimental to the one, would be of no peculiar value beyond
mere convenience to the other, then no grant would be im-
plied.

Within the foregoing principles, and upon the authority of
the adjudications cited, it seems clear that so far as the house
on lot four projected over and rested on the strip of ground
in dispute, the grant of an easement to continue such use would
be implied.

Assuming that both parties knew the exact boundaries, it
could not have been within the intendment of either that the
house should be moved, or a portion of the wall or over-
hanging parts shorn off.

It is also found by the court that other appurtenances to
the house are located on the five-foot strip. The character
of these is not disclosed in the findings. Being appurtenant
to the house, presumptively they would pass with it. This
presumption, however, may be rebutted by showing that they
were of a temporary character, readily readjusted or replaced,
or that their use was not essential to the comfortable enjoy-
ment of the house in the condition it was in when mortgaged.
If the strip in dispute was devoted to such use, as that, in
order to render the house on lot four accessible by the usual
and ordinary methods, substantial changes in the structure
or in its arrangement would be involved, or its use in the

usual and ordinary methods would be impaired unless such changes were made, to the extent that it was so used the use should continue.

As the conclusions thus reached render it necessary to reverse the judgment appealed from, and as we do not deem the question of estoppel involved in the record in its present condition, we give that question no further consideration.

As the judgment of the superior court quieted the title of the appellee in the whole strip, notwithstanding the fact found that the house rested in part on the margin of it, it is deemed at least to that extent erroneous, and is accordingly reversed, with costs, and remanded for a new trial.

Filed Sept. 15, 1885; petition for a rehearing overruled Nov. 21, 1885.