SABINSKE ET AL. *v.* PATTERSON.

[No. 15,053.   Filed June 24, 1935.   Rehearing denied October 18, 1935.]

*Roscoe R. Peddicord,* and *Pattee & McMahan,* for appellants.

*Sheehan & Lyddick,* and *Moore, Long & Johnson,* for appellee.

WOOD, J.—The appellee brought suit against the appellants for possession of a tract of real estate in Lake County. The complaint was in one paragraph in the usual form. The issues were closed by an answer in

general denial. The cause was tried to the court without a jury, a special finding of facts was made, a conclusion of law stated thereon in favor of the appellee, and judgment rendered in accordance therewith. Error of the court in stating its conclusion of law is the only question presented by the record for our consideration.

The facts as found by the court are lengthy and involved; they may be summarized as follows: By a patent issued to him by the United States March 30, 1837, one Mark Beaubien received title to the land in controversy together with other lands. On December 11, 1909, by mesne conveyances from Mark Beaubien, Arza B. Hitt and Rosa M. B. Hitt held deeds of conveyance to the land. On or about February 16, 1911, while in possession of the land in controversy, with other lands, and claiming the ownership · thereof, one Drusilla Carr brought suit in the Lake Superior Court against "Mark Beaubien, the unknown heirs of Mark Beaubien, deceased; ——— Beaubien, whose Christian name is unknown, the widow of Mark Beaubien, deceased; the unknown heirs of ——— Beaubien, widow of Mark Beaubien, whose true Christian name is unknown"; Arza B. Hitt; Rosa M. B. Hitt, and many other persons designated as defendants, whose names it is not necessary to set out, to quiet her title thereto. On change of venue the cause was transferred to the LaPorte Superior Court where, on May 17, 1912, after trial had, a judgment was rendered in favor of Drusilla Carr quieting her title in and to the real estate in controversy together with other lands, against all the defendants to said cause of action. Afterwards on appeal to the Appellate Court, the judgment of the LaPorte Superior Court was affirmed.

November 28, 1911, Drusilla Carr, by her warranty deed, conveyed an undivided one-sixth interest in a tract of land containing the tract in controversy to George H. Manlove and Albert C. Carver. August 16, 1916, Drusilla

Carr, by her quit claim deed, quit claimed all her interest in a tract of land in which was included the land in controversy to Edward Carr, Clara Buckingham, Fredrick W. Carr, Henry R. Carr, and Nettie Nellis, and upon April 23, 1917, Edward Carr and wife, Fredrick W. Carr and wife, Henry R. Carr and wife, Nettie Nellis and her husband signed, acknowledged, and delivered a warranty deed to Drusilla Carr describing the same real estate set out and described in the quit claim deed which she had executed and delivered to them August 16, 1916. Clara Buckingham, one of the named grantees in the quit claim deed of August 16, 1916, and her husband signed the warranty deed to Drusilla Carr but neither of them acknowledged its execution before any officer authorized to take acknowledgment of deeds. The names of the husbands of Nettie Nellis and Clara Buckingham did not appear as grantors in the granting clause of the deed, though they signed same. Between the dates of November 28, 1911, and October 23, 1915, Drusilla Carr conveyed certain undivided interests in a tract of land including the land in controversy to other persons, the details of which transactions it is not necessary to set out. November 28, 1924, in the Lake Circuit Court, Drusilla Carr and Everett G. Ballard, as plaintiffs, brought suit against Bertha A. Manlove, Daniel E. Kelly, Albert C. Carver, and Henry Warrum, to partition the tract of land including the tract in controversy, the title to which had formerly been quieted in Drusilla Carr among them. All parties appeared to this action and on July 3, 1925, a decree was entered partitioning the respective interests of the parties in said land and a commissioner was appointed to convey such interests to the parties adjudged to be entitled thereto. Thereafter, on July 3, 1925, pursuant to an order of the court, said commissioner executed and delivered to Albert C. Carver, as his share in said larger tract of land, which

included that portion thereof here in controversy, his commissioner's deed conveying such tract to Albert C. Carver. Thereafter Albert C. Carver executed and delivered his deed to the appellee, conveying to appellee the tract of land so set off and conveyed to Albert C. Carver in the partition suit above referred to. This deed was placed on record January 27, 1928, in the deed records of Lake County. The appellee then went into possession of the tract of land so conveyed to him, except that part thereof actually occupied by appellants, and collected rent from certain cottages located upon the other portions thereof, but did not collect any rent from either of the appellants, who refused to recognize the asserted right of appellee in that portion of the land occupied by them, being the land in controversy, and they were using and occupying it at the time of the trial of this cause. This land, together with other lands along the shore of Lake Michigan, was unfenced, was used and frequented by persons who passed over the land at will, but made no claim to it. Fishermen did sometimes occupy various portions of the land near that in controversy for various lengths of time during the fishing season, but the land in controversy was not actually occupied and resided upon by any person other than the appellants, though Drusilla Carr claimed to own the same and quieted her title thereto as heretofore stated. Neither Drusilla Carr, the appellee, nor any person claiming under her, nor the appellants ever paid any taxes on this land. About fifty years previous to December, 1932, one Albert Sabinske, father of the appellants, moved onto an island in the Grand Calumet River, which island was located in an easterly direction from the land in controversy, being separated therefrom by that branch of the river passing on the west side of the island. After moving onto the island, he used the land in controversy on which to beach his boats used for fishing purposes and

on which to dry his nets; he also maintained a shed near the shore of the lake in which to keep and market fish. About 1911, because of high water on the island, Albert Sabinske moved his building which he had erected thereon across the river onto a portion of the land described in the complaint and in controversy, and he, his wife and family, including the appellants, continued to reside on said land, occupying it as a residence and place to conduct a fishing business. Albert Sabinske died in 1914. The appellants with their mother remained on the premises and in conjunction with her continued to conduct the fishing business. The mother died three or four years after the death of her husband, Albert Sabinske. Following the death of their mother appellants continued to occupy and use the property and were so doing at the time of the trial of this cause. Drusilla Carr, through whom appellee claimed title, had claimed the ownership of the land since 1876, though she did not actually live upon and occupy the tract in controversy after the Sabinskes entered upon it, she asserted title and claimed ownership in the suit in which she quieted her title prior to the entry of the Sabinskes upon the land, but she did not make any of them party defendant to that action.

Sometime during the life of Albert Sabinske he and Drusilla Carr joined in the execution of a written instrument in words and figures as follows:

"This Writing Evidences that Drusilla Carr and Albert Sabinske have agreed that said Sabinske shall occupy the following described real estate in Lake County, Indiana, to wit: That part of Section Thirty-one (31), Township Thirty-seven (37) North, Range Seven (7) West, lying north of the Indian boundary line and east of the pike road with cottage, fishery.

"It is further expressly agreed by and between said parties that the tenancy hereby created shall be a tenancy at will only, which may be determined

hereby at the will of either party; and it is further expressly agreed herein that this agreement is not to create an estate at will, but a tenancy at will only. That the title to said premises is in Drusilla Carr and that said lessor during said tenancy does not have an estate at will or otherwise in said premises but that said tenancy hereby created is a tenancy at will, and the said Drusilla Carr reserves the right to let other tenants at will in like manner occupy other parts of said premises, with cottages or tents.

"This lease shall not be assignable, without the written consent, on the back hereof, by Drusilla Carr, which shall be in her own handwriting.

(Signed) Albert Sabinske,
Drusilla Carr."

Neither of the appellants knew of the existence of this instrument nor that Drusilla Carr made claim to the property as landlord in her relations with Albert Sabinske until after the commencement of this action. There was never any lease executed by the appellee and appellants, and they never recognized the appellee or any of his predecessors in title as their landlord.. Both Drusilla Carr and appellee for more than ten years previous to the commencement of this action, and their various agents, attorneys and representatives demanded rentals and surrender of possession of said land by the appellants, and they, at all times after the death of their father Albert Sabinske, refused to surrender the possession of said land to appellee or Drusilla Carr. The appellee was the owner as against the appellants of the real estate described in the complaint and was entitled to the immediate possession thereof and $50 damages.

The rules by which this court is controlled when examining a special finding of facts and conclusions of law stated thereon for the purpose of determining whether or not error has been committed have been so often stated that we will not again set them out in this opinion.

Appellants contend that the title to the land was in issue, that in order to entitle him to recover the burden

was upon appellee to establish a fee simple title
in the real estate. We recognize the well estab-
lished rule, that in actions of this kind the plain-
tiff must recover upon the strength of his own title.
Nevertheless, the record does not sustain appellant's
contention. The complaint, which was not tested by
demurrer, alleged "That he is the owner of the follow-
ing described real estate." An allegation of this kind
has been held sufficient against demurrer, it is not a
total omission of an essential allegation, is at most an
indefinite and uncertain averment that will be deemed
cured after judgment. *Peoria, etc., R. Co.* v. *Attica,
etc., R. Co.* (1900), 154 Ind. 218, 56 N. E. 210; *Burt* v.
*Bowles* (1879), 69 Ind. 1; *Steeple* v. *Downing* (1878),
60 Ind. 478; *Schenck* v. *Kelly* (1882), 88 Ind. 444;
*Meyers* v. *Jackson* (1893), 135 Ind. 136, 34 N. E. 810;
*Pittsburgh Ry. Co.* v. *O'Brien* (1895), 142 Ind. 218, 41
N. E. 528; Secs. 3-1301 and 3-1303, Burns 1933; Secs.
941 and 950, Baldwin's Ind. St. 1934.

The facts found by the court fully established appel-
lee's ownership in the land as alleged in the complaint.
The source of his title was from Drusilla Carr.
May 17, 1912, while in possession of the land as
owner thereof under a claim of right and title,
dating from 1876, a judgment was rendered by the
LaPorte Superior Court quieting her title thereto
against all defendants to an action brought by her for
that purpose, including Mark Beaubien to whom the
United States issued a patent March 30, 1837, and his
immediate and remote grantees claiming any interest
in the real estate. This had the effect of vesting the title
thereto in her as against the parties defendant in that
action. *Bowen* v. *Preston* (1874), 48 Ind. 367; *Brown*
v. *Anderson* (1883), 90 Ind. 93; *Stalcup* v. *Lingle*
(1921), 76 Ind. App. 242, 131 N. E. 852; *Blood* v.
*Weiler* (1921), 76 Ind. App. 605, 132 N. E. 650.

November 28, 1911, Drusilla Carr conveyed an undivided one-sixth interest in the land in which her title was later quieted, including the tract in controversy, to George H. Manlove and Albert C. Carver by warranty deed. This deed of course carried with it all the conditions provided in sec. 56-115, Burns 1933; sec. 14460, Baldwin's Ind. St. 1934. Said grantees would be the recipients of any benefits inuring to Drusilla Carr by virtue of the judgment quieting her title in the land after the execution of the warranty deed. *Karnes* v. *Wingate* (1884), 94 Ind. 594; *DeHaven* v. *Musselman* (1890), 123 Ind. 62, 24 N. E. 171; *Pence* v. *Long* (1906), 38 Ind. App. 63, 77 N. E. 961; *Dibble* v. *Lloyd* (1920), 73 Ind. App. 320, 127 N. E. 453.

Albert C. Carver was a party defendant to the suit instituted by Drusilla Carr and Everett G. Ballard November 28, 1924, for the purpose of partitioning the tract of land in which her title had been quieted, including the land in controversy, among the parties to said proceeding according to their respective interests. The final judgment in this partition suit, in so far as it awarded and set off to Carver his share in severalty in the tract of land, including that here in controversy, was self executing, required no execution to enforce the terms of the judgment, his rights in severalty were thereby fixed and absolutely determined without process of any kind. *Randles* v. *Randles* (1879), 67 Ind. 434. After rendition of the judgment, execution, approval and delivery of the commissioner's deed, setting off to Carver in severalty his share of the land, including the tract here in controversy, he executed and delivered a deed of said tract so set off to him to the appellee. In addition to these facts found by the court, tracing the title of the land into appellee, the court found as an ultimate fact,

"That plaintiff is the owner as against the defendants of the real estate described in the complaint." The sufficiency of the evidence to sustain this finding of fact is not challenged by motion for a new trial presented for our consideration.

But appellants insist, that the deed dated August 16, 1916, from Drusilla Carr to the five grantees named therein had the effect of breaking appellee's chain of title, because in the deed dated April 23, 1917, in which the grantees in the deed of August 16, 1916, attempted to reconvey the land to Drusilla Carr, Clara Buckingham, one of the five grantees in that deed, and her husband, while they both signed the deed, failed to acknowledge its execution. Appellant's position is not tenable, for appellee's title was in no way dependent upon these conveyances. His immediate grantor Albert C. Carver received his warranty deed from Drusilla Carr November 28, 1911, so his interest in the land had vested in him several years before the deed to the five grantees was executed. Furthermore the deed of August 16, 1916, was a quit claim deed, the effect of which was to convey only such interest or estate in the land as the grantor held at the time of its execution. *Sullenger* v. *Baecher* (1914), 55 Ind. App. 365, 101 N. E. 517, 102 N. E. 380; Sec. 56-116, Burns 1933; Sec. 14661, Baldwin's Ind. St. 1934.

Sometime previous to his death in 1914, Albert Sabinske and Drusilla Carr entered into the written contract above set out. This contract was incorporated in full in finding of fact No. 40. The finding may have contained some evidentiary facts, but they were more than evidence, because they furnished a basis for the inference of ultimate facts within the issues. *Rowley* v. *Sanns* (1895), 141 Ind. 179, 40 N. E. 674; *Mount* v. *Board, etc.*, (1907), 168 Ind. 661, 80 N. E. 629; *Daily* v. *Smith* (1918), 66 Ind.

App. 393, 118 N. E. 312. From the terms of the contract it is clear that Albert Sabinske occupied the land as a tenant at will of Drusilla Carr. *Doe* v. *Richards* (1853), 4 Ind. 374; *Knight* v. *Indiana, etc., Co.* (1874), 47 Ind. 105; sec. 3-1615, Burns 1933; sec. 10170, Baldwin's Ind. St. 1934, and his death in 1914 terminated that tenancy. *Manchester* v. *Doddridge* (1853), 3 Ind. 360; 1 Tiffany, Landlord and Tenant, pp. 115 and 142; 35 C. J. sec. 358, p. 1129, and "An understanding, founded on a verbal agreement with a tenant at will, is terminated by the death of the latter, and such under tenant is not entitled to notice to quit before entry by the owner." 35 C. J. *supra; Robie* v. *Smith* (1842), 21 Me. 114. There is no finding that the appellants occupied the land as under tenants or assignees of their father. The contract expressly provided that it should not be assignable without the written consent of the lessor. The finding is silent on any such written assignment having ever been made, if such a tenancy could be assigned, which question it is not necessary for us to determine.

The appellants remained in occupancy of the land after the death of their father and mother. Neither of them paid any rent to any person for its use and occupancy. For more than ten years both Drusilla Carr and appellee demanded rental and surrender of possession of the land, and appellants had at all times refused to surrender possession and occupancy since the death of their father. The appellants never had any actual knowledge of the existence of the written contract between their father and Drusilla Carr and that she made claim to the land as landlord in her relation with him until after the commencement of this action. There was never any lease executed between appellants and appellee and they never recognized ap-

pellee nor any of his predecessors in title as their landlord.

If from the facts as found by the court, appellants were more than mere trespassers on the land, it was only as tenants at sufference and that being the case no notice to quit was necessary on behalf of appellee before bringing his action. *Whetstone* v. *Davis* (1870), 34 Ind. 510; *Coomler* v. *Hefner* (1882), 86 Ind. 108; *Cargar* v. *Fee* (1894), 140 Ind. 572, 39 N. E. 93; *Walsh* v. *Seller* (1934), 207 Ind. 82, 191 N. E. 334; 1 Tiffany, Landlord and Tenant, pp. 142 and 151; 35 C. J. Sec. 372, p. 1136; §3-1620, Burns 1933; sec. 10177, Baldwin's Ind. St. 1934, and he and his predecessors were entitled to possession of the land.

Finally, appellants say that the statement included in the court's finding of facts, to wit: "That plaintiff is the owner as against the defendants of the ▮▮▮ real estate described in the complaint and is entitled to the immediate possession thereof and $50 damages," is not the finding of an ultimate fact but is the statement of a conclusion of law. We cannot accept appellant's contention as correct. In actions for possession of real estate, it is necessary for the plaintiff to prove and for the court to find that he is entitled to possession of the land. It was the finding of essential ultimate facts necessary to entitle the appellee to recover. *Koch* v. *Arnold* (1909), 242 Ill. 208, 89 N. E. 1028; *Bogda* v. *Glos* (1910), 244 Ill. 575, 91 N. E. 657; *Pittsburgh, etc., Ry. Co.* v. *O'Brien, supra.*

As heretofore suggested, since the sufficiency of the evidence to sustain this finding is not questioned and presented to us by a motion for a new trial, we ▮▮ assume that these, together with the other ultimate facts embraced within the special finding, have been correctly found.

In conclusion we quote with approval from the opin-

ion of our Supreme Court in the case of *National Surety Co.* v. *State ex rel. Heinmann* (1913), 181 Ind. 54, 60 103 N. E. 105, as follows:

"In determining whether these conclusions are supported by the facts as specially found it is necessary to bear in mind the rule thus stated in *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 367, 26 N. E. 159, 9 L. R. A. 754, 22 Am. St. 593, 'a special finding, like a special verdict, a series of instructions, or the like, must be considered as a whole, and it cannot be dissected into fragmentary parts and successfully assailed in detail. One part may be considered in connection with other connected parts, or parts referring to the same transaction, and if taken as a whole the finding legitimately supports the judgment it will be upheld.' And in determining whether the judgment is thus supported, all intendments, and presumptions are in favor of the finding rather than against it."

The special finding of facts is amply sufficient upon which to predicate the conclusion of law and the judgment is therefore affirmed.

Curtis, J., not participating.