**Frank J. ENDERLE and Kay M. Enderle, Appellants (Plaintiffs Below),**

**v.**

**John L. SHARMAN, John W. Sharman, John H. Williams, Jr.: Birch I. Williams, S. Miller Williams, As Co-Executors of the Last Will and Testament of Alice Ijams Sharman, Deceased, & Fereydoon B. Boushehry, Appellees (Defendants Below).**

No. 1–580A121.

Court of Appeals of Indiana, First District.

June 29, 1981.

Rehearing Denied August 11, 1981.

Robert A. Hutchens, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, for appellants.

Geoffrey G. Creason, Terre Haute, for appellee Fereydoon B. Boushehry.

Cox, Zwerner, Gambill & Sullivan, Terre Haute, for appellees, John L. Sharman, John W. Sharman, John H. Williams, Jr., Birch I. Williams, S. Miller Williams, as co-executors of the Last Will and Testament of Alice Ijams Sharman, deceased.

ROBERTSON, Judge.

Frank J. Enderle and Kay M. Enderle (Enderle) appeal the summary judgment entered in favor of the co-executors of the estate of Alice Ijams Sharman (Sharman) and Fereydoon B. Boushehry (Boushehry). This case concerns an easement which runs over four tracts of land in Vigo County. Enderle initiated this proceeding by bringing an action to quiet title. The action was referred to a special master by the agreement of parties. Sharman and Boushehry moved for summary judgment and a hearing was held before the master. The master recommended that the motion for summary judgment be granted. The trial court adopted the findings of fact and conclusions of law recommended by the master which Enderle now appeals.

Sharman and Boushehry assert that Alice Ijams Sharman died seized of certain real estate along with an easement in Country Club Road across the real estate. The land in question was originally an undivided parcel but has been subsequently divided into four tracts.[1] Tract IV is the largest tract and it occupies the southern half of the area. Tract I lies in the northeast quadrant above Tract IV. Tract III is directly north of Tract IV and borders the southwest section of Tract I. Tract II lies north of Tract III and borders the northwest section of Tract I. Country Club Road runs in an east-west direction through Tracts II and III and winds into Tracts I and IV. Country Club Road forms the boundary between Tracts II and III such that the north half of the road lies in Tract II and the south half of the road is in Tract III. Country Club Road also forms the boundary between Tracts I and III. The half of the Road north and east of the center line is in Tract I and the south and west half of the road lies in Tract III. Tract IV is owned by the Terre Haute Country Club and their right to use the easement is not being questioned. Boushehry has filed plans to subdivide Tract I and use Country Club Road as the means of access.

William P. Ijams and Sallie J. Ijams (Ijams) were the common owners of the property before it was severed into the four tracts. In 1916, the Ijams entered into an agreement with the adjacent landowner, Julia B. Donham, for an easement across the Donham land. (This agreement is here-

1. The property in question was divided into parcels as shown below:

inafter referred to as the Ijams-Donham agreement). The purpose of the easement was to enable the Ijams to have access to the Bono State Road, now State Highway 41. The agreement noted that the Ijams desired to use the roadway in connection with their plans to devote a portion of their land for residential development and for a Golf and Country Club.

The Ijams conveyed Tracts III and IV to the Terre Haute Country Club in 1917 while retaining their interests in Tract I and II. This agreement provided an easement for both the grantor and grantee such that both parties could use the common roadway, which is now known as Country Club Road. The agreement incorporated the Ijams-Donham agreement by reference and attached a copy of said agreement to the original deed. The agreement established that the easement was not limited to the original parties and that the easement was to be used perpetually.

In 1937, the Terre Haute Country Club conveyed Tract III to Helen F. Ijams, the wife of an heir to the Ijams property. William P. Ijams and Sallie J. Ijams both died intestate and their interests passed to their children, Jesse Warren Ijams, Alice Ijams Benbridge, and Frank Burch Ijams. Frank Burch Ijams was married to Helen F. Ijams and Alice Ijams Benbridge was married to Richard A. Benbridge. The three children held title to Tracts I and II as tenants in common. In 1929, Jesse Warren Ijams and Alice Ijams Benbridge, along with her husband, conveyed their interests in Tract II to Helen F. Ijams but reserved an easement over the Country Club Road. Jesse Warren Ijams and Alice Ijams Benbridge did not grant their interests in Tract I with this conveyance.

Alice Ijams Benbridge and Frank Burch Ijams, along with their spouses, conveyed Tract I to Alice Ijams Williams and John H. Williams. Frank Burch Ijams died and his interest in Tract II passed to his wife. Alice Ijams Williams became divorced and reconveyed her interest to herself under the name of Alice I. Sharman. Helen F. Ijams died and Alice I. Sharman was a co-executor of her estate. In 1975, Enderle purchased Tract II from the co-executors of

the estate of Helen F. Ijams. Enderle subsequently purchased Tract III from the Helen F. Ijams estate. Alice I. Sharman died and Tract I remained in her estate. Boushehry has entered in agreement to purchase Tract I from the executors of the estate of Alice I. Sharman.

Boushehry claims that he has an easement on Country Club Road over Tracts II and III appurtenant to Tract I. Enderle brought this action to quiet title. Sharman and Boushehry each moved for summary judgment. The motion was based on the abstract of title and an affidavit by the abstractor. Enderle was served with copies of the affidavit but did not receive a copy of the abstract. The motions also contained certified copies of the 1917 deed from the Ijams to the Terre Haute Country Club and the deed from Jesse Warren Ijams and Alice Ijams Benbridge to Helen F. Ijams. Both sides filed briefs in support of their position. The master then made his findings of fact and conclusions of law which found in favor of Boushehry and Sharman. The trial court notified all parties of its intent to incorporate these findings and grant the motion for summary judgment on August 16, 1979. The order for summary judgment was entered on September 20, 1979.

Enderle has raised thirteen alleged errors on appeal. For purposes of clarity, we have consolidated these into seven issues. Enderle argues that the judgment was based on improper evidence, that the trial court improperly applied the law to the facts, that Sharman should be estopped from claiming an easement, that the trial court improperly found the agreement between the Donham and Ijams created an easement on the Enderle's land, that less than all of the co-tenants reserved an easement in Tract II, that the grantor could not reserve an interest in real estate in the name of a third party to the transaction, and that summary judgment was improper because of the existence of genuine issues of material facts.

■ Enderle argues that the judgment is based upon improper evidence because the abstract relied upon by the special master was not served upon Enderle with the mo-

tion for summary judgment. Enderle objects that the abstract itself was inadmissible and the affidavits constituted opinion evidence. Sharman argues that Ind. Rules of Procedure, Trial Rule 5(A) does not require service of the abstract.[2] Ind. Rules of Procedure, Trial Rule 56(E) provides in relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* (Emphasis added).

We believe the above quoted language of T.R. 56(E) is controlling because the abstract was the basis of the affidavit included with the motion for summary judgment. A copy of the abstract should have been served on Enderle. *See, Lukacs v. Kluessner*, (1972) 154 Ind.App. 452, 290 N.E.2d 125.

■ The failure to include a copy of the abstract does not mandate reversal because Enderle did not inform the master of the defective service. It is incumbent upon the party complaining of the failure to comply with the rules of service pursuant to T.R. 5 to bring such defect to the trial court's attention or compliance is waived. *Jurdzy v. Liptak*, (1962) 243 Ind. 1, 180 N.E.2d 530. We believe that the complaining party has a similar duty to direct the trial court's attention to a defective affidavit pursuant to T.R. 56. Failure of a party opposing summary judgment to raise an objection constitutes waiver. *Ahnert v. Wildman*, (1978) Ind.App., 376 N.E.2d 1182.

To allow otherwise, would permit litigants to await favorable rulings prior to objecting. A party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences. *Harker v. Eisenhut*, (1937) 212 Ind. 67, 6 N.E.2d 936.

■ Enderle also argues that the trial court should not have considered the abstract because the abstract violates the best evidence rule and it constitutes hearsay. Although Enderle is correct in his analysis that the abstract could be ruled inadmissible on both of these grounds, Enderle has waived his argument by failing to raise these objections at the summary judgment hearing. Enderle asserts that the issue is not waived because there is no jury to protect and the judge is equally exposed to the evidence whether it is admitted or excluded from evidence. Enderle claims that the motion to correct errors preserves the objection. T.R. 56 closely follows the corresponding federal rule. 3 W. Harvey, Indiana Practice § 56.1 at 552 (1970). The federal rule is quite clear that an affidavit which does not satisfy the requirements of Rule 56(E) is subject to a motion to strike and that formal defects are waived in absence of a motion to strike or other objection. A belated claim of error can be persuasive only to prevent a gross miscarriage of justice. *Noblett v. General Electric Credit Corp.*, (10th Cir. 1968) 400 F.2d 442. Enderle should have moved to strike the affidavits because they relied upon inadmissible evidence or objected to them at the hearing. There has been no showing of a gross miscarriage of justice. It must also be noted that the record contains certified

---

2. T.R. 5(A) provides:

(A) Service: When required. Unless otherwise provided by these rules or an order of the court, each party shall be served with:

1. Every order required by its terms to be served;

2. Every pleading subsequent to the original complaint;

3. Every written motion except one [1] which may be heard ex parte;

4. Every brief submitted to the trial court except trial briefs;

5. Every paper relating to discovery required to be served upon a party; and

6. Every written notice, appearance, demand, offer of judgment, designation of record on appeal, or similar paper.

No service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

copies of some of the deeds in question but that these copies are virtually illegible such that the abstract may have been admissible due to the condictiones of the official records, if an objection had been raised.

Enderle also argues that the affidavit of the abstractor should not have been admitted because it was opinion evidence and that the abstract was not an official record of Vigo County. This alleged error is also waived because Enderle failed to either object to the affidavit or move to strike it. Additionally, we see no merit in the argument that an affidavit constitutes opinion evidence. The form for affidavits in this situation is governed by T.R. 56(E). The facts underlying the affidavit establish that the affiant has engaged in the business of preparing abstracts for forty-one years, that the abstract was prepared by his employer, and that said abstract contains all entries of record. Although there may have been some objections to the abstract itself, we find no merit in Enderle's argument that the affidavit was inadmissible because it constitutes opinion evidence. Enderle also argues that the affidavit and abstract were not made part of the record in this proceeding. These items were in the possession of the special master and have been properly placed within the record such that this defect has been cured.

In rendering its decision, the trial court found an easement over Tract II and III on several grounds. The trial court found an appurtenant easement over Tract III was created by the conveyance by the Ijams to the Terre Haute Country Club. In finding this easement, the trial court partially relied upon the 1916 Ijams-Donham agreement. The trial court also found an easement over Tract II. This finding was based on the reservation of an easement in the conveyance of Tract II to Helen F. Ijams by Jesse Warren Ijams and Alice Ijams Benbridge. The trial court also found an implied easement over Tract II. For purposes of clarity, this opinion will analyze the easement as it directly relates to Tracts II and III.

Enderle disputes the trial court's finding that an easement was created over Tract III by the 1917 conveyance by the Ijams to the Terre Haute Country Club. Enderle claims there has been a merger of Tracts I, II, and III by the conveyance of Tract III by the Terre Haute Country Club to Helen F. Ijams. This issue is not contained in the motion to correct errors and therefore, it is waived. *State v. Holder*, (1973) 260 Ind. 336, 295 N.E.2d 799. Enderle also contends that Sharman has failed to provide sufficient proof to demonstrate the parties intended to create an easement.

When examining the granting of summary judgment, the reviewing court must determine whether there is an genuine issue of material fact and whether the law is correctly applied. The burden is on the moving party to establish that no genuine issue of material fact exists and any doubt must be resolved in favor of the non-moving party. Even if the facts are not in dispute, summary judgment is inappropriate where there is a good faith dispute as to the inferences to be drawn from these facts. *Ang v. Hospital Corporation of America*, (1979) Ind.App., 395 N.E.2d 441. The question raised by Enderle is whether the Ijams and the Terre Haute Country Club intended to create an easement in the 1917 conveyance. Where there is no ambiguity in a deed, the intention of the parties must be determined from the language of the instrument alone. *Long v. Horton*, (1956) 126 Ind.App. 651, 133 N.E.2d 568. Therefore, it is necessary to examine the 1917 deed to determine if the parties intended to create an easement.

In 1917, the Ijams severed their land and conveyed Tracts III and IV to the Terre Haute Country Club while retaining ownership of Tracts I and II. The deed provides:

> the said roadway extending from the eastline of the Julia B. Donahm lands . . . is for the common use of said grantors [Ijams] their heirs, representatives and assigns, and said grantee, its successors or assigns, each having a common and not an exclusive right to use same perpetually . . .

This deed also incorporated by reference and attached a copy of the 1916 Ijams-Donham agreement. We believe the above language clearly demonstrates an intent to establish an easement over Country Club Road on behalf of both the Ijams and the Terre Haute Country Club. The Ijams, however, only retained an easement over the southern half of Country Club Road running through Tracts III and IV. The deed did not create an easement, on behalf of the Ijams, over Tracts I and II because the Ijams retained ownership of these parcels. A landowner cannot possess an easement in his own property. *John Hancock Mutual Insurance Co. v. Patterson,* (1885) 103 Ind. 582, 2 N.E. 188. Thus, this agreement only created an easement over those portions of Country Club Road located in Tracts III and IV. The party who moves for summary judgment has the burden to demonstrate no genuine issue of material fact. *Ang v. Hospital Corporation of America, supra,* however, where the materials filed by the moving party establish the lack of a genuine issue of material fact, the non-moving party must set forth specific facts establishing a genuine issue of material fact or the movant is entitled to summary judgment. *Letson v. Lowmaster,* (1976) Ind.App., 341 N.E.2d 785. We remain unpersuaded that a genuine issue of material fact exists as to whether the 1917 conveyance to the Terre Haute Country Club created an easement.

[redacted] Enderle argues that the trial court misapplied the law and that the trial court should not have relied upon the Ijams-Donham agreement, in addition to the conveyance to the Terre Haute Country Club, to find an easement over Tract III. Enderle claims the trial court improperly analyzed the Ijams-Donham agreement because this agreement only created an easement over the Donham land such that the Ijams property became the dominant tenement and did not burden the Ijams properly with an easement. Enderle's analysis is correct, but it was not erroneous to rely on the Ijams-Donham agreement because this agreement was incorporated by reference in several other conveyances and they must be construed together.

The trial court found an easement over the northern half of Country Club Road, the portion of the road which lies in Tract II, on two grounds. The trial court found an easement by reservation was contained in the deed from Jesse Warren Ijams and Alice Ijams Benbridge conveying Tract III to Helen F. Ijams. The trial court also found an implied easement over this portion of Country Club Road. Enderle claims the trial court erred on both grounds.

In 1929, Jesse Warren Ijams and Alice Ijams Benbridge conveyed their two-thirds interest as tenants in common in Tract II to Helen F. Ijams, the wife of the third co-tenant. The deed states:

> That the roadway extending from the east line of the Julia B. Donham land ... is for the common use of said grantors, their heirs, representatives, grantees and assigns and said grantee, heirs, representatives, grantees and assigns, and the Country Club of Terre Haute, its successors and assigns, each having a common and not an exclusive right to use same perpetually ...

In 1930, Jesse Warren Ijams conveyed his one-third interest in Tract I to the remaining co-tenants, Frank Burch Ijams and Alice Ijams Benbridge. In 1956, these two co-tenants conveyed Tract I to Alice Ijams Williams. The deed was silent regarding an easement. As previously noted, Alice Ijams Williams was the same person to Alice Ijams Sharman.

[redacted] Enderle challenges the trial court's finding that an easement was created by the conveyance of Tract II to Helen F. Ijams. Enderle asserts that an easement cannot be reserved for a stranger to the transaction. The law in Indiana provides that a grantor cannot reserve a life estate in real property to a party who is a stranger to the transaction, *Olge v. Barker,* (1946) 224 Ind. 489, 68 N.E.2d 550, but that a grantor can convey an easement by reservation to a party who is a stranger to the transaction. *Brademas v. Hartwig,* (1977) Ind.App., 369 N.E.2d 954. Enderle further

claims that no easement was reserved because only two of the three co-tenants reserved an easement when Tract II was conveyed to Helen F. Ijams. Enderle argues that if an easement was created by this transaction, then two co-tenants could effectively diminish the estate of the remaining co-tenant. This problem is particularly complex because Frank Burch Ijams, the remaining co-tenant, was married to Helen F. Ijams and also owned interests in Tract I and II concurrently. Obviously, since Frank Burch Ijams was not conveying his interest in Tract II there was no need for his participation in the reservation of the easement, but furthermore, he could not have reserved an easement because he was a co-tenant in both tracts and one cannot claim an easement in his own property. *John Hancock Mutual Insurance Co. v. Patterson, supra.* We cannot see how the reservation of the easement by Jesse Warren Ijams and Alice Ijams Benbridge could diminish the interests of Frank Burch Ijams. Although this case should be limited to its facts, we believe the trial court was correct in its finding.

The trial court also found an implied easement over Tract II appurtenant to Tract I. The trial court examined the 1916 Donham-Ijams agreement to establish an intent to create an easement and noted that Tract II was subject to an obvious servitude when both tracts were still retained by the Ijams. In reaching this conclusion, the trial court relied upon *John Hancock Mutual Insurance Co. v. Patterson, supra,* 103 Ind. at 586, 2 N.E. 188, where our supreme court stated:

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is

also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.

In the present case, there is no doubt that Tract II was subject to an obvious servitude, Country Club Road, for the benefit of Tract I. Enderle argues that Tract I has never been utilized and lies in an undeveloped condition and therefore, Boushehry should not be allowed to subdivide Tract I, because this would constitute a much greater use than at the time of severance. Enderle also contends that the trial court should not have relied on the Ijams-Donham agreement in this finding.

■ We previously found that the trial court did not err in relying upon the 1916 Ijams-Donham agreement because this agreement was incorporated by reference and made a part of several other conveyances. The trial court relied upon this agreement to imply an easement. We, again, find no error. The agreement provided:

> [the Ijams] desire to subdivide into lots, streets and alleys all or part of said lands to be sold for residential purposes only, and to lease or sell to a company or corporation such part of said lands as may be desired for establishment thereon of a country and golf club.

> To enable [Ijams], their heirs, grantees or lesses, near and remote, to communicate with an improved highway, it is necessary to have an easement to use the present private way . . .

■ Several important rules of construction must be followed when construing deeds. The entire deed is to be regarded, and the parts thereof are to be construed together so that no part is rejected. The object of the construction is to ascertain the intent of the parties and it must be their intent that every part has some meaning, therefore, we favor a construction which

reconciles the different parts, and reject the construction which leads to a contradiction. When the language of the deed is unambiguous and the intent of the parties can be clearly ascertained from the instrument, the only duty of the court is to give effect to the terms as written in the deed. *Claridge v. Phelps*, (1937) 105 Ind.App. 344, 11 N.E.2d 503.

The previously quoted language of the Ijams-Donham agreement clearly manifests an intent on behalf of the Ijams to use the roadway for residential purposes of all the tracts. Since this agreement was incorporated by reference in many subsequent conveyances, the language is dispositive of whether an easement was intended. We also believe the language disposes of another issue raised by Enderle. Enderle argues that a subdivision will materially burden the roadway. The language specifies an intent to use the roadway for ingress and egress in conjunction with residential development. We must, therefore, adopt this intention.[3]

An additional contention submitted by Enderle is that Sharman and Boushehry should be estopped from claiming an easement over Tracts II and III. Alice Ijams Sharman was a co-executrix of the estate of Helen F. Ijams. In this role, she participated in the conveyance to Enderle, and she owned Tract I. The deeds conveying Tracts II and III to Enderle did not specifically mention the easement. Enderle argues Sharman should be estopped from claiming the easement because Alice Ijams Sharman received a portion of the proceeds of the sale as an heir and since she participated in the conveyances and now claims an adverse interest. Enderle received quit claim deeds from the estate of Helen F. Ijams, which subjected his interest to the restriction of record. The deeds, in part, conveyed:

Together with the right of ingress and egress over existing roadways in accordance with agreements the same heretofore named made. Subject to all conditions and restrictions of record.

The effect of a quit claim deed conveys only the interest or estate as the grantor held at the time of execution. *Sabinske v. Patterson*, (1935) 100 Ind.App. 657, 196 N.E. 539. At the time of the conveyance, Helen F. Ijams owned property subject to an easement in favor of Tract I. A deed which purports to transfer nothing but the grantor's interest, without defining said interest or asserting the extent of the grantor's interest, does not operate to pass an interest not yet in existence. *Shumaker v. Johnson*, (1871) 35 Ind. 33. There is nothing in the facts to establish that Enderle was misled as to the extent of the easement. Moreover, the easement was apparent and the deeds were transferred "subject to all restrictions of record." We remain unconvinced that this case is proper for applying the doctrine of estoppel.

The final argument submitted by Enderle is that there exists genuine issues of material fact which renders this case unfit for summary judgment. Enderle specifically argues there is a genuine issue of whether the parties intended to create an easement and the reasonable use of the easement. The 1916 Ijams-Donham agreement, the 1917 conveyance to the Terre Haute Country Club, and the conveyances among the Ijams' heirs demonstrate not only an intent to create an easement, but that the easement was to be used with residential development.

The judgment is affirmed.

NEAL, P. J., and YOUNG, P. J. (sitting by designation), concur.

---

3. Enderle also contends that the language of Ijams-Donham agreement provides that if Country Club Road ever becomes a "public road" then the easement shall terminate. This set of circumstances has not yet arisen, but if and when it does occur, the right to enforce this provision would not lie with Enderle, but with the successor to the Donham's interest.